NICHIMEN AMERICA, INC., formerly known as Nichimen Co., Inc., Plaintiff–Appellant,

v.

The UNITED STATES, Defendant–Appellee.

No. 90–1004.

United States Court of Appeals, Federal Circuit.

July 10, 1991.

Ralph A. Mantynband, Arvey, Hodes, Costello & Burman, Chicago, Ill., argued for plaintiff-appellant. With him on the brief was Edward H. Soderstrom, II.

Velta A. Melnbrencis, Commercial Litigation Branch, Dept. of Justice, Washington, D.C., argued for defendant-appellee. With her on the brief were Stuart M. Gerson, Asst. Atty. Gen. and David M. Cohen, Director. Also on the brief were Wendell Willkie, II, Gen. Counsel, Stephen J. Powell, Chief Counsel for Import–Administration and Anne White, Attorney–Advisor, Office of the Chief Counsel for Import Admin., U.S. Dept. of Commerce, of counsel.

Before NEWMAN, ARCHER and ALARCON,* Circuit Judges.

ARCHER, Circuit Judge.

Nichimen America, Inc. (Nichimen) appeals from the judgment of the United States Court of International Trade, *Nichimen Am., Inc. v. United States,* 719 F.Supp. 1106 (Ct.Int'l Trade 1989), dismissing for lack of jurisdiction Nichimen's appeal from the denial of a protest filed with the United States Customs Service (Customs). We affirm-in-part, reverse-in-part, and remand for further proceedings.

I

On March 10, 1971, the Secretary of the Treasury issued a finding of dumping of television receivers imported from Japan, making them subject to the imposition of antidumping duties. *See* T.D. 71–76, 5 Cust.Bull. 151 (1971). Between May and November of 1976, a period during which T.D. 71–76 was effective, Nichimen imported Japanese-manufactured television receivers into the United States. The television receivers were allegedly manufactured and imported for Montgomery Ward & Co., Inc. Nichimen posted an immediate entry and consumption bond, agreeing to pay any duties ultimately found to be due, to obtain the release of the television receivers before formal entry and ascertainment by Customs of the applicable duties and charges assessable. The television receivers were released into the stream of commerce between May and November, 1976.

On August 30, 1985, the Department of Commerce notified Nichimen that its television receivers entered before March 31, 1979 (including the entries between May and November, 1976), would be assessed additional antidumping duties at 3.37% *ad valorem* unless Nichimen requested an administrative review pursuant to section 751(a) of the Trade Agreements Act of 1979, 19 U.S.C. § 1675(a) (1982). When no request under section 751(a) was made for the television receivers at issue, these entries were liquidated on August 15, 1986, and the additional 3.37% *ad valorem* antidumping duties were assessed.

After payment of the assessed duties, Nichimen timely filed a protest under 19 U.S.C. § 1514(a) (1982) alleging that (a) all dumping duties with respect to Nichimen's entries for Montgomery Ward had been settled under a 1980 settlement agreement,[1] (b) Customs had not followed re-

---

\* Honorable Arthur L. Alarcon of the United States Court of Appeals for the Ninth Circuit, sitting by designation.

1. On April 28, 1980, the Attorney General and the Secretaries of Commerce and Treasury entered into an agreement with twenty-two importers, including Montgomery Ward, in order to settle and compromise all claims for antidumping duties against the importers arising

under T.D. 71–76 prior to April 1, 1979. *See Committee to Preserve Am. Color Television v. United States,* 706 F.2d 1574, 1576 (Fed.Cir.), *cert. denied,* 464 U.S. 825, 104 S.Ct. 96, 78 L.Ed.2d 102 (1983); *Montgomery Ward & Co., Inc. v. Zenith Radio Corp.,* 673 F.2d 1254, 1255–56 (CCPA), *cert. denied,* 459 U.S. 943, 103 S.Ct. 256, 74 L.Ed.2d 200 (1982).

quired appraisal procedures because the imported goods "were not actually before the appraiser when the appraisement was made," (c) Customs had not determined the foreign market value and the cost of production of the goods as required under 19 U.S.C. § 161, (d) the entries were not timely liquidated as required under applicable Customs law and therefore "the United States is estopped to liquidate these entries," (e) "[t]he determination upon which the United States relies in assessing the anti-dumping duty was arbitrary, capricious and an abuse of discretion, and not in accordance with law," (f) the price of the entries was no less than foreign market value or less than fair value, and (g) the dumping findings were improperly applied to Nichimen "inasmuch as the true 'manufacturer/exporter' was Hitachi, Ltd./Nichimen Co., Inc." Protest ¶¶ 3(a)–(g).

When its protest was denied, Nichimen filed a summons and complaint in the Court of International Trade in January, 1987, alleging jurisdiction under 28 U.S.C. § 1581(a) (1982). The complaint mirrored the allegations in the protest.

In the Court of International Trade, Nichimen moved for summary judgment or, in the alternative, judgment on the pleadings. The government opposed the motion alleging that the court lacked jurisdiction under section 1581(a) and also sought summary judgment. Both Nichimen's and the government's motions for summary judgment were denied. *Nichimen Am., Inc. v. United States*, Nos. 88–128, 87–01–00047, 1988 WL 98472 (Ct. Int'l Trade, September 22, 1988). The court concluded that genuine issues of material fact remained in dispute over whether the 1980 settlement agreement covered the claims at issue and whether Customs had employed proper appraisal procedures. The government's motion to dismiss for lack of jurisdiction was denied with leave to renew. *Id.*

Thereafter, the Court of International Trade granted the government's renewed dismissal motion on the ground that the court lacked jurisdiction under 28 U.S.C. § 1581 to hear the claims. *Nichimen*, 719 F.Supp. at 1109–10. The court held that

the Customs determinations challenged in Nichimen's protest were not protestable matters because the determinations were final and conclusive under 19 U.S.C. § 1514(b), as amended by the Trade Agreements Act of 1979. Not being protestable matters, the court held that Customs' denial of the protest did not give it jurisdiction under 28 U.S.C. § 1581(a). *Id.* In addition, the court indicated that Nichimen properly should have requested section 751 review when it was notified by the Department of Commerce that it could request such a review. Because Nichimen had not exhausted this administrative remedy, the court held that it also lacked jurisdiction under 28 U.S.C. § 1581(c). *Id.*

## II

A. The jurisdiction of the Court of International Trade, as pertinent here, is set forth in 28 U.S.C. § 1581:

§ 1581. Civil actions against the United States and agencies and officers thereof;

(a) The Court of International Trade shall have exclusive jurisdiction of any civil action commenced to contest the denial of a protest, in whole or in part, under section 515 of the Tariff Act of 1930 [19 U.S.C. § 1515].

(b) . . . .

(c) The Court of International Trade shall have exclusive jurisdiction of any civil action commenced under section 516a of the Tariff Act of 1930 [19 U.S.C. § 1516a].

Nichimen contends that section 1581(a) conferred jurisdiction on the Court of International Trade over its complaint because all of the issues in the complaint had been included in Nichimen's timely filed protest, which Customs denied. We must, therefore, consider whether the Court of International Trade had jurisdiction over any or all of Nichimen's claims. Specifically, the question is whether Nichimen sought and exhausted the proper administrative remedies for the claims at issue.

Jurisdiction is a question of law. *See Zumerling v. Marsh*, 783 F.2d 1032, 1034 (Fed.Cir.1986). As such, we review *de*

*novo* the Court of International Trade's decision as to its jurisdiction.[2]

The jurisdictional question in this case is complicated by the passage of the Trade Agreements Act of 1979, Pub.L. No. 96–39, 93 Stat. 144 (the 1979 Act), which became effective on January 1, 1980. Nichimen imported the television receivers prior to the 1979 Act's effective date, but the antidumping duties were assessed after the effective date. We must consider provisions of the Antidumping Duty Act of 1921, 19 U.S.C. §§ 160–173 (1976) (the 1921 Act), as well as the 1979 Act and its transitional rules, to determine whether the trial court's jurisdictional rulings were correct.

B. The 1921 Act provided for the assessment of a special antidumping duty equal in amount to the difference between the foreign market value and the purchase price (or the exporter's sales price). 19 U.S.C. § 161(a). When a finding of dumping was issued by the Secretary of the Treasury, Customs was delegated the responsibility of determining and assessing antidumping duties. Section 169 provided that the assessment of the special dumping duties under the 1921 Act was subject to the same right of appeal and protest as other customs duties.[3] Thus, once the duties were assessed, the determinations of Customs, such as foreign market value, purchase price, etc., used to compute the antidumping duties could be challenged by filing an administrative protest. *See* 19 U.S.C. § 1514(a) (1976).[4] If the protest was denied, a civil action under 28 U.S.C. § 2632 (1976) contesting the antidumping duties, including the underlying less than fair value and injury determinations which led to the dumping finding, could then be brought in the United States Customs Court.[5] *See, e.g., Pasco Terminals v. United States*, 634 F.2d 610 (CCPA 1980). Prior to the 1979 Act, therefore, protest after liquidation of an entry was the only administrative procedure available for contesting special antidumping duties.

The 1979 Act replaced the 1921 Act with a new antidumping statute. Pub.L. No. 96–39, § 101, 93 Stat. 144, 150–189. Any outstanding dumping findings issued under the 1921 Act, however, were continued in effect under the 1979 Act. Pub.L. No. 96–39, § 106, 93 Stat. 144, 193. The statute also provided that the 1979 Act was generally applicable to any assessment of antidumping duties after its effective date, January 1, 1980, but it contained one exception where the prior law procedures for protest and judicial review continued to be

---

**2.** Nichimen's argument that law of the case precluded the trial court from entertaining the government's renewed motion to dismiss is without merit. The court expressly reserved decision on the jurisdictional issues by indicating that the government could renew its motion to dismiss. *See United States v. U.S. Smelting Co.*, 339 U.S. 186, 199, 70 S.Ct. 537, 544, 94 L.Ed. 750 (1950); *see also* Rule 54(b), Rules of the Court of International Trade.

**3.** 19 U.S.C. § 169 (1976) provided:

For the purposes of section 160 to 171 of this title, the determination of the appropriate customs officer as to the foreign market value or the constructed value, as the case may be, the purchase price, and the exporter's sales price, and the action of such customs officer in assessing special dumping duty, shall have the same force and effect and be subject to the same right of protest, under the same conditions and subject to the same limitations.

**4.** As pertinent here, 19 U.S.C. § 1514(a) (1976) provided that

decisions of the appropriate customs officer, including the legality of all orders and findings entered into the same, as to—

(1) the appraised value of merchandise;
(2) the classification and rate and amount of duties chargeable;
(3) all charges or exactions of whatever character within the jurisdiction of the Secretary of the Treasury;
. . . .
(5) the liquidation or reliquidation of an entry, or any modification thereof;
. . . .

shall be final and conclusive upon all persons (including the United States and any officer thereof) unless a protest is filed in accordance with this section, or unless a civil action contesting a denial of a protest, in whole or in part is commenced in the United States Customs Court in accordance with section 2632 of Title 28 within the time prescribed by section 2631 of that title.

**5.** The Customs Court Act of 1980, Pub.L. No. 96–417, 94 Stat. 1727, redesignated the United States Customs Court as the United States Court of International Trade.

applicable. Section 1002(b)(3) of the 1979 Act provided:

> The amendments made by this title shall apply with respect to the review of the assessment of, or failure to assess, any countervailing duty or antidumping duty on entries subject to a countervailing duty order or antidumping finding if the assessment is made after the effective date. If no assessment of such duty had been made before the effective date that could serve the party seeking review as the basis of a review of the *underlying determination,* made by the Secretary of the Treasury or the International Trade Commission before the effective date, on which such order, finding, or lack thereof is based, then the *underlying determination* shall be subject to review in accordance with the law in effect on the day before the effective date.

(Emphasis added.) As explained in H.R. Rep. No. 317, the second sentence of section 1002(b)(3) was to ensure that underlying determinations of countervailing duty orders and antidumping findings would not escape review entirely under the newly-enacted statute.

> Thus, if a determination is made prior to the effective date, but the first assessment which can serve as the basis for review occurs after the effective date, review of such a determination would not be available under either current law or the bill. This provision ensures that this does not occur and that rights of review under current law are preserved where necessary.

H.R.Rep. No. 317, 96th Cong., 1st Sess. 183 (1979). *See also* S.Rep. No. 249, 96th Cong., 1st Sess. 255–56, *reprinted in* 1979 U.S.Code Cong. & Admin.News 381, 641–42.

■ C. Nichimen contends that its protest is judicially reviewable under this provision. The government asserts, however, that the protest and complaint do not challenge the underlying determinations—*i.e.,*

"either Treasury's less-than-fair value [dumping] determination or the ITC's injury determination"—but that Nichimen contests only "the assessment of antidumping duties which is based upon the rate established by Commerce." [6]

Although Nichimen stated generally in its protest and complaint that "[t]he determination upon which the United States relies in assessing the anti-dumping duty was arbitrary, capricious and an abuse of discretion, and not in accordance with law," none of the specific paragraphs of the protest or complaint challenges the underlying dumping determination in T.D. 71–76. Moreover, Nichimen does not argue on brief that the finding of either Treasury or the ITC was erroneous. Rather, Nichimen characterizes the protested actions as the failure of Customs "to follow its own mandated procedures and the requirement of law ... in liquidating the entries in question and the assessment of duties."

Accordingly, we conclude, as did the Court of International Trade, that Nichimen did not seek review of the "underlying determination" and, therefore, is not entitled to rely on the exception contained in section 1002(b)(3) to support its use of the protest procedure applicable before the 1979 Act.

### III

A. After the effective date of the 1979 Act, the procedure for seeking administrative review of antidumping duties was changed. The 1979 Act amended 19 U.S.C. § 1514(a) and (b) to exclude antidumping determinations from the matters that can be protested to Customs. Instead of filing a protest, the amended statute required review by the Department of Commerce, which was designated as the administering authority for countervailing and antidumping duties. Section 751 of the 1979 Act, 19 U.S.C. § 1675, initially called for such a review to be made annually. The Trade and Tariff Act of 1984, Pub.L. No. 98–573, revised the annual review procedure to

---

**6.** The administration of the antidumping law was transferred from the Secretary of the Treasury to the Secretary of Commerce on January

2, 1980. *See* Reorganization Plan No. 3 of 1979, §§ 5(a)(1)(C), (D), (G), 93 Stat. 1381, 1383 (codified at 19 U.S.C. § 2171 (1988) note).

make an administrative review available only if it is requested.

Following the latter change, the statute reads in pertinent part:

§ 1675. Administrative review of determinations

(a) Periodic review of amount of duty

(1) In general

At least once during each 12–month period beginning on the anniversary of the date of publication of ... an antidumping duty order under this subtitle or a finding under the Antidumping Act, 1921, ... the administering authority, if a request for such a review has been received ... shall—

(A) ...

(B) review, and determine (in accordance with paragraph (2)), the amount of any antidumping duty, and

(C) ...

and shall publish the results of such review, together with notice of any duty to be assessed, ... in the Federal Register.

(2) Determination of antidumping duties

For the purpose of paragraph (1)(B), the administering authority shall determine—

(A) the foreign market value and United States price of each entry of merchandise subject to the antidumping duty order and included within that determination, and

(B) the amount, if any, by which the foreign market value of each such entry exceeds the United States price of the entry.

The administering authority ... shall publish notice of the results of the determination of antidumping duties in the Federal Register, and that determination shall be the basis for the assessment of antidumping duties on entries of the merchandise included within the determination and for deposits of estimated duties.

19 U.S.C. § 1675.

The antidumping determinations made by Commerce under the above procedures can be contested only by a civil action commenced in the Court of International Trade.

*See* 19 U.S.C. § 1516a(a)(2)(A) and (B)(iii). At the same time as it conferred antidumping duty review on Commerce as the administering agency, Congress also provided that the actions of Customs implementing determinations of Commerce under section 751 were to be "final and conclusive upon all persons." *See* 19 U.S.C. § 1514(b). For any matter that is subject to review under section 751, the 1979 Act made administrative review under that section a prerequisite to judicial review by the Court of International Trade. *See* 28 U.S.C. § 1581(c).

B. Nichimen contends that the matters raised in its protest were not subject to administrative review under section 751. Nichimen further contends that when its protest was denied it had exhausted the proper administrative remedy, 19 U.S.C. § 1514(a), and that the Court of International Trade therefore had jurisdiction over its appeal under 28 U.S.C. § 1581(a).

■ The language of section 751 encompasses certain of the matters that were the subject of Nichimen's protest. The statute expressly provides that in reviewing antidumping duties the administering authority shall determine "the foreign market value and the United States price of each entry of merchandise subject to the antidumping duty order," and "the amount, if any, by which the foreign market value of each entry exceeds the United States price of the entry." 19 U.S.C. § 1675(a)(2). Nichimen's assertions in its protest that Customs had not determined foreign market value and cost of production under 19 U.S.C. § 161 and that the price of its entries were no less than foreign market value or less than fair value, *see* Protest ¶¶ 3(c) and 3(f), are squarely within the purview of section 751. While not expressly listed by the statute as matters to be reviewed under section 751, we are convinced that Nichimen's claims in its protest that (1) the determination upon which the United States relies in assessing the antidumping duty was arbitrary, capricious and an abuse of discretion and not in accordance with law, and (2) the dumping findings were improperly applied to Nichimen because the manufacturer/exporter was Hita-

chi Ltd./Nichimen Co., Inc. are also the types of questions that can readily be considered and answered in connection with a section 751 review. Protest ¶¶ 3(e) and 3(g).

■ The remaining three protested items, however, do not fall within the language of section 751, nor are they items that would be treated as ancillary to the determinations required under section 751. The question of whether Nichimen's entries for Montgomery Ward had been settled under the 1980 settlement agreement, Protest ¶ 3(a), is beyond the scope of a section 751 review. The settlement was negotiated and signed by a number of importers with representatives of the Departments of Justice and Treasury, as well as the Department of Commerce. Because of the various parties and government representatives involved in the settlement, the Department of Commerce should not under the limited authority of section 751 be considered the proper agency to interpret this agreement. Rather, this is a matter properly falling within the general category of protestable matters set forth in 19 U.S.C. § 1514(a)(3)—"all charges or exactions of whatever character within the jurisdiction of the Secretary of the Treasury."

Nichimen's protest also asserts that Customs did not follow its own procedures and requirements for appraisal of the merchandise and for timely liquidation of the entries. Protest ¶¶ 3(b) and 3(d). These are matters relating to the imposition of customs duties generally and not just to anti-dumping duties. Moreover, these issues are squarely within subparagraphs (1) and (5) of the listing of protestable matters in 19 U.S.C. § 1514(a). Subparagraph (1) covers "the appraised value of merchandise" and subparagraph (5) "the liquidation or reliquidation of an entry, or any modification thereof."

Accordingly, we hold that the issues raised in paragraphs 3(a), (b), and (d) of Nichimen's protest were protestable under the procedures of 19 U.S.C. § 1514(a). The Court of International Trade erred in dismissing Nichimen's complaint for lack of jurisdiction with respect to these items on the grounds that Nichimen had not exhausted its proper administrative remedy. The case is remanded to the Court of International Trade for trial on these protested items. In all other respects the judgment of the Court of International Trade is affirmed.

## COSTS

Each party shall bear its own costs.

AFFIRMED–IN–PART, REVERSED–IN–PART AND REMANDED.