MITSUBISHI ELECTRONICS
AMERICA, INC.,
Plaintiff,

v.

UNITED STATES, Defendant.

**Slip Op. 94–42.**
**Court No. 91–12–00841.**

United States Court of
International Trade.

March 10, 1994.

Baker & McKenzie, Washington, DC (Thomas P. Ondeck, Kevin M. O'Brien and William D. Outman, II), for plaintiff.

Frank W. Hunger, Asst. Atty. Gen. of the U.S.; David M. Cohen, Director, Commercial Litigation Branch, Civ. Div., U.S. Dept. of Justice, (Marc E. Montalbine); Patrick V. Gallagher, Jr., Atty.–Advisor, Office of the Chief Counsel for Import Admin., U.S. Dept. of Commerce, Washington, DC, for defendant.

## OPINION

CARMAN, Judge:

Plaintiff and defendant cross-move for summary judgment pursuant to USCIT R. 56. Plaintiff brought this action to contest a decision by the United States Customs Service (Customs) denying plaintiff's protest under 19 U.S.C. § 1515(a) (1988). Plaintiff's protest challenged the application of the automatic duty assessment provision contained in 19 C.F.R. § 353.53a(d)(1) (1988) to entries that plaintiff had made during the interim period between the publication of the preliminary and final less than fair value determinations in *64K Dynamic Random Access Memory Components (64K DRAMs) From Japan.*[1] 50 Fed.Reg. 50,649 (Dep't Comm. 1985) (prelim. determ) (*Preliminary Determination*); 51 Fed.Reg. 15,943 (Dep't Comm.1986) (final determ.) (*Final Determination*). The interim period was from December 11, 1985 until April 29, 1986. Pursuant to § 353.53a(d)(1), the Department of Commerce (Commerce) ordered Customs to assess duties on entries made during the interim period using the 94 percent deposit rate in effect during that time. Plaintiff predicates jurisdiction on 28 U.S.C. § 1581(a) (1988) or, in the alternative, 28 U.S.C. § 1581(i)(2) (1988). Defendant cross-moves for summary judgment.

## I. BACKGROUND

On July 15, 1985, the Department of Commerce (Commerce) commenced an antidump-

ing duty investigation of imports of 64K dynamic random access memory components (DRAMs) from Japan. *Preliminary Determination,* 50 Fed.Reg. at 50,649. After the International Trade Commission determined there was a reasonable indication such imports were materially injuring or threatening to materially injure a United States industry, Commerce found several companies were selling or were likely to sell the imports in the United States at less than fair value. *Id.* Commerce published notice of the *Preliminary Determination* on December 11, 1985. *Id.*

Plaintiff was one of the companies investigated in the *Preliminary Determination. Id.* With respect to plaintiff, Commerce found a weighted-average dumping margin equal to 94 percent. *Id.* at 50,652. Commerce directed Customs "to suspend liquidation of all entries of 64K DRAMs from Japan that are entered, or withdrawn from warehouse, for consumption, on or after the date of publication of [the *Preliminary Determination* ] in the **Federal Register.**" *Id.* (emphasis in original). Commerce also indicated "Customs shall require a cash deposit or the posting of a bond equal to the estimated weighted-average [dumping margin]...." *Id.*

On April 29, 1986, Commerce issued the *Final Determination.* In the *Final Determination,* Commerce substantially revised the dumping margin it had previously established for plaintiff from 94 percent to 13.43 percent. 51 Fed.Reg. at 15,954. Commerce also directed Customs to continue to suspend liquidation of entries of the subject merchandise "entered, or withdrawn from warehouse, for consumption, on or after December 11, 1985[,]" the date on which Commerce published notice of the *Preliminary Determination. Id.* at 15,953–54. As in the *Preliminary Determination* and with respect to

---

1. The regulation at issue reads as follows: *Automatic assessment of duties.* (1) For orders or findings, if the Secretary does not receive a timely request under paragraph (a)(1), (a)(2), (a)(3), or (a)(5) of this section, the Secretary, without additional notice, will instruct the Customs Service to assess antidumping duties on the merchandise described in paragraphs (b)(1) through (b)(3) of this section at rates equal to the cash deposit of (or bond for) estimated antidumping duties required on that merchandise at the time of entry, or withdrawal from warehouse, for consumption and to continue to collect the cash deposit previously ordered.
19 C.F.R. § 353.53a(d)(1). This regulation now appears as 19 C.F.R. § 353.22(e) (1993).

plaintiff, Commerce ordered Customs to "require a cash deposit or the posting of a bond equal to" the 13.43 percent dumping margin. *Id.* at 15,954.

On June 16, 1986, Commerce published an antidumping duty order for the merchandise affected by the *Preliminary* and *Final Determinations. 64K Dynamic Random Access Memory Components (64K DRAMs) From Japan,* 51 Fed.Reg. 21,781 (Dep't Comm.1986) (antidumping duty order) (*Order*). In the *Order,* Commerce directed Customs to assess "antidumping duties equal to the amount by which the foreign market value of the merchandise subject to the order exceeds the United States price for all entries of such merchandise from Japan." *Id.* at 21,782. Commerce also noted "[t]hese antidumping duties will be assessed on all unliquidated entries of such merchandise entered, or withdrawn from warehouse, for consumption on or after December 11, 1985, the date on which the Department published its 'Preliminary Determination' notice in the **Federal Register.**" *Id.* (emphasis in original).

Approximately one year later, on June 5, 1987, Commerce published a notice of opportunity to request administrative review of the *Order. Antidumping or Countervailing Duty Order, Finding, or Suspended Investigation,* 52 Fed.Reg. 21,338 (Dep't Comm. 1987) (opport. to request admin. review) (*Administrative Review Notice*). The *Administrative Review Notice* indicated any interested party under the *Order* could ask Commerce to conduct an administrative review of the *Order* for the period between "December 11, 1986 and May 31, 1987."[2] *Id.* The *Notice* allowed interested parties until June 30, 1987 to make their requests for an administrative review. *Id.* The *Notice* also indicated the following:

> If the Department does not receive by June 30, 1987 a request for review of en-

tries covered by an order or finding listed in this notice and for the period identified above, *the Department will instruct the Customs Service to assess antidumping or countervailing duties on those entries at a rate equal to the cash deposit of (or bond for) estimated antidumping or countervailing duties required on those entries at the time of entry, or withdrawal from warehouse, for consumption* and to continue to collect the cash deposit previously ordered.

*Id.* (emphasis added).

Neither plaintiff nor any other interested party requested an administrative review of the *Order.* Because no party sought an administrative review, Commerce relied on the automatic assessment regulation, 19 C.F.R. § 353.53a(d)(1), and instructed Customs to assess antidumping duties on plaintiff's merchandise at a rate equal to the bond for estimated duties required on the merchandise at the time of entry, or withdrawal from warehouse, for consumption. As the rate applicable to the period between the publication of the preliminary and final determinations was 94 percent, Commerce required Customs to assess plaintiff with 94 percent antidumping duties for entries made during this period. As noted previously, the period involved extended from December 11, 1985 to April 29, 1986.

On October 21, 1988, Customs liquidated the entries covered by the first administrative review period. Pursuant to Commerce's direction and with respect to entries made between December 11, 1985 to April 29, 1986, Customs assessed duties using the 94 percent deposit rate established in the *Preliminary Review.*

Plaintiff subsequently filed a protest with Customs on January 5, 1989. In its protest, plaintiff challenged Customs' assessment of 94 percent duties and sought interest on the amount paid in excess of the final 13.43 per-

---

**2.** It appears Commerce's *Administrative Review Notice* contains a typographical error with respect to the dates that an administrative review would have covered. Under Commerce's regulations, an initial § 751 review such as the one addressed in the *Administrative Review Notice* "will cover ... entries ... during the period *from the date of ... suspension of liquidation to*

*the end of the month immediately preceding the anniversary month."* 19 C.F.R. § 353.53a(b)(2) (1987) (emphasis added). Because suspension of liquidation occurred on December 11, 1985, when Commerce published notice of the *Preliminary Determination,* it would appear the period under review would be from *December 11, 1985* until May 31, 1987.

cent margin. On December 10, 1991, Customs denied plaintiff's protest with respect to the duties assessed, but approved the protest as to the interest accruing from monies paid. Thereafter, on February 21, 1992, plaintiff commenced this action in the Court of International Trade (CIT).·

## II. CONTENTIONS OF THE PARTIES

### A. *Plaintiff*

Plaintiff advances two arguments with respect to the Court's jurisdiction in this case. First, plaintiff contends this Court has jurisdiction under 28 U.S.C. § 1581(a). Pl's Reply Br. at 18, 20–21. Plaintiff argues because it could not have challenged the application of the automatic assessment provision in 19 C.F.R. § 353.53a(d)(1) in an administrative review under § 751 of the Tariff Act of 1930,[3] this action involves a protestable matter under 19 U.S.C. § 1514 as to which the Court can exercise jurisdiction under 28 U.S.C. § 1581(a). *Id.* at 18–19 (citing *Nichimen Am., Inc. v. United States,* 9 Fed.Cir. (T) 103, 938 F.2d 1286 (1991)). According to plaintiff, as the automatic assessment provision only applies when an interested party does not request an annual review, no party could ever challenge the provision's application in an annual review. *Id.* Therefore, plaintiff charges, the provision is subject to protest under 19 U.S.C. § 1514(a)(5) under *Nichimen. Id.*

Alternatively, should the Court determine jurisdiction is improper under § 1581(a), plaintiff asserts jurisdiction exists under § 1581(i)(2). *Id.* at 20; Transcript of Oral Argument (Tr.) at 13–14. Plaintiff claims the CIT has recognized a presumption favoring judicial review in connection with exercising § 1581(i) jurisdiction over actions such as this in which a party is aggrieved by agency action. Pl's Reply Br. at 20 (citing *Krupp Stahl A.G. v. United States,* 15 CIT 169, 1991 WL 62139 (1991)). Moreover, plaintiff urges this Court can exercise jurisdiction under § 1581(i) because the CIT has previously recognized it had jurisdiction under that subsection where " 'the plaintiffs challenged assessment at the estimated rate and the validity of

the automatic assessment regulation.' " *Id.* at 21 (quoting *Krupp Stahl,* 15 CIT at 171).

As to the merits of its case, plaintiff contends Commerce's application of 19 C.F.R. § 353.53a(d)(1) violates United States dumping laws and the GATT Antidumping Code. Pl's Br. at 9. Plaintiff asserts numerous GATT provisions prohibit dumping duties from exceeding final dumping margins and require Commerce to recalculate provisional duties when the duties established in a final determination are lower than the provisional duties. *Id.* at 7–10 (citing GATT arts. 2, 8, 10, 11). Plaintiff also maintains the application of § 353.53a(d)(1) violates the purposes of 19 U.S.C. §§ 1673, 1673f (1988) because it enables Commerce to collect duties in excess of the final and more accurate deposit rate. *Id.* at 9–15. According to plaintiff, the preliminary rate is punitive rather than remedial in nature and, as such, contravenes the purpose of the dumping laws. *Id.* at 22. Therefore, plaintiff asserts liquidation should occur at the rate established in the *Final Determination.*

Finally, in the event the Court orders Customs to reliquidate plaintiff's entries, plaintiff argues it is entitled to interest on its overpayment of duties. Plaintiff claims such interest is due from the date the government received plaintiff's duty payments until the date the government refunds plaintiff's excess payments. *Id.* at 23–24.

### B. *Defendant*

Defendant contends this Court lacks subject matter jurisdiction to review plaintiff's challenge to the application of 19 C.F.R. § 353.53a(d)(1). Def's Br. at 6. Defendant maintains jurisdiction is improper under 28 U.S.C. § 1581(a) because this subsection only applies to matters that are properly protestable under 19 U.S.C. § 1514. *Id.* at 6–7 (citing *Nichimen,* 9 Fed.Cir. (T) at 103, 938 F.2d at 1286). Defendant claims the calculation of dumping duties is exclusively within the province of Commerce and, therefore, the issue raised by plaintiff in its protest was not protestable under § 1514. *Id.* at 7–9. As the matter was not protestable in the first instance with Customs, defendant urges this

---

**3.** Codified as amended 19 U.S.C. § 1675 (1988).

Court lacks jurisdiction under § 1581(a). According to defendant, plaintiff's only recourse was to seek a § 751 review from Commerce. *Id.* at 9–10.

With respect to the merits of this action, defendant contends the application of 19 C.F.R. § 353.53a(d)(1) to plaintiff's entries conforms to United States dumping laws and the legislative intent behind these laws. *Id.* at 10. Defendant emphasizes the § 751 administrative review proceeding is the mechanism by which Commerce assesses duties, but notes the section does not specify the manner in which Commerce must assess duties when no party requests an administrative review. *Id.* at 14. Rather, defendant claims, Congress left to Commerce's discretion the formulation of a method for duty assessment when a review is not requested. *Id.* (citing H.R. CONF.REP. No. 1156, 98th Cong., 2d Sess. 181 (1984), *reprinted in* 1984 U.S.C.C.A.N. 4910, 5220, 5298). Defendant asserts the regulation and its application in this case are reasonable because plaintiff had an opportunity to request an administrative review. *Id.* at 16–17. As such a review would have caused the final assessment to be based upon an actual review of plaintiff's entries, defendant argues plaintiff cannot now properly rely on a less accurate benchmark—the final margin—as an assessment rate. *Id.* at 17.

In addition, defendant urges Commerce's assessment methodology comports with the GATT. *Id.* In sum, defendant contends the GATT does not prohibit Commerce from assessing duties at a rate equal to the estimated deposit rate established in the preliminary determination. *Id.* at 17–18 (citing GATT arts. 8 and 11).

Finally, defendant asserts plaintiff has no authority for obtaining the interest it seeks on claimed duty overpayments. *Id.* at 21–22. According to defendant, as plaintiff never overpaid duties, plaintiff has no basis for receiving interest from the date it made its payments. *Id.* at 22. In the event the Court orders Customs to refund any of plaintiff's duties, defendant maintains plaintiff would only be entitled to interest from the date plaintiff filed its summons. *Id.* (citing 28 U.S.C. § 2644 (1988)).

## III. DISCUSSION

The threshold issue in this case is whether this Court has subject matter jurisdiction to review a challenge to the application of the automatic assessment provisions contained in 19 C.F.R. § 353.53a(d)(1). For the reasons which follow, the Court concludes it cannot exercise jurisdiction in this case under either 28 U.S.C. § 1581(a) or (i).

### A. *Application of 28 U.S.C. § 1581(a)*

■ Plaintiff's first jurisdictional claim relies on 28 U.S.C. § 1581(a). Section 1581(a) provides for the following: "The Court of International Trade shall have exclusive jurisdiction of any civil action commenced to contest the denial of a protest, in whole or in part, under section 515 of the Tariff Act of 1930." Section 515 of the Tariff Act of 1930 corresponds to 19 U.S.C. § 1515 (1988), which establishes, in part, the requirement that Customs issue a decision granting or denying a protest filed under 19 U.S.C. § 1514. By its own terms and in conjunction with § 1515, the provisions in § 1581(a) indicate a party must satisfy the protest requirements contained in § 1514 before Customs may assess its claims and issue a protest denial from which the party may bring suit in the CIT pursuant to § 1581(a).

The critical aspect of § 1514 for purposes of this action is subsection (a). This subsection, in part, identifies which Customs' decisions are subject to protest as follows:

[D]ecisions of the appropriate customs officer, including the legality of all orders and findings entering into the same, as to—

(1) the appraised value of merchandise;

(2) the classification and rate and amount of duties chargeable;

(3) all charges or exactions of whatever character within the jurisdiction of the Secretary of the Treasury;

(4) the exclusion of merchandise from entry or delivery or a demand for redelivery to customs custody under any provision of the customs laws, except a determination appealable under section 1337 of this title;

(5) the liquidation or reliquidation of an entry, or any modification thereof;

(6) the refusal to pay a claim for drawback; and

(7) the refusal to reliquidate an entry under section 1520(c) of this title,

shall be final and conclusive upon all persons ... unless a protest is filed in accordance with this section, or unless a civil action contesting the denial of a protest, in whole or in part, is commenced in the United States Court of International Trade. . . . . .

19 U.S.C. § 1514(a). Plaintiff argues Customs' actions in this case are subject to protest under § 1514(a)(5). Pl's Reply Br. at 19. A cursory reading of § 1514(a) appears to support plaintiff's position. On its face, the instruction that Commerce provides to Customs pursuant to 19 C.F.R. § 353.53a(d)(1) to assess antidumping duties "at rates equal to the cash deposit of (or bond for) estimated antidumping duties required on that merchandise at the time of entry" seems to be an "order[ ] . . . entering into" a "decision [by a] Customs officer . . . as to . . . the liquidation . . . of an entry" within the meaning of § 1514(a)(5). Despite the superficial appeal of plaintiff's position, a close inspection of the overall structure of the dumping laws reveals a legislative intent to remove Customs' actions such as those underlying plaintiff's claim from the ambit of protestable events under § 1514.

In 1979, Congress enacted 19 U.S.C. § 1516a in order to create specific judicial review procedures for certain countervailing duty and antidumping proceedings. H.R. REP. No. 317, 96th Cong., 1st Sess. 181 (1979). In promulgating this provision, Congress sought to substitute the former process which required parties to begin their challenges in the form of a protest and review before Customs with an administrative review proceeding before Commerce under § 751 or direct judicial review under § 1516a. Id. One year later, in 1980, Congress provided the CIT with its "major jurisdictional grants of authority" under 28 U.S.C. § 1581 and further clarified the review procedures parties must follow for obtaining relief. See H.R. REP. No. 1235, 96th Cong., 2d

Sess. 44 (1980), reprinted in 1980 U.S.C.C.A.N. 3729, 3755.

In adopting § 1581, Congress clearly intended to distinguish between claims that were subject to protest under 19 U.S.C. § 1514 and judicial review under 28 U.S.C. § 1581(a) on the one hand and claims that were subject to § 751 administrative reviews and/or judicial review under 19 U.S.C. § 1516a and 28 U.S.C. § 1581(c) on the other. Specifically, Congress noted the following:

It is the intent of the Committee that importers and their sureties not utilize proposed section 1581(a) to circumvent the exclusive method of judicial review of an antidumping . . . determination listed in section 516A of the Tariff Act of 1930 (19 U.S.C. § 1516a), as provided in that section. Section 516A of the Tariff Act of 1930 was added to that Act by the Trade Agreements Act of 1979. The 1979 Act revised the antidumping . . . statutes so as to provide, inter alia, that each year the administering authority must publish a statement of the proposed antidumping . . . duty to be assessed upon all merchandise covered by an antidumping duty . . . order and which entered the United States during the preceding year. Section 516A of the Tariff Act of 1930 provides that an importer must challenge the assessment or the amount of the antidumping duty to be imposed at the time of the annual publication. An importer may not await the actual assessment of the duty, file a protest, and upon denial of the protest file a civil action in the Court of International Trade under proposed section 1581(a). Rather, the Committee intends that such actions be commenced pursuant to statutes governing the commencement of a civil action to review the determinations listed in section 516A of the Tariff Act of 1930.

H.R. REP. No. 1235 at 44, reprinted in 1980 U.S.C.C.A.N. at 3756 (emphasis added). The preceding passage clearly indicates Congress' intent to preclude parties from challenging Customs' assessment pursuant to Commerce's § 751 determination by commencing a protest proceeding under 19

U.S.C. § 1514 from which they could initiate an action in the CIT under § 1581(a).

Although Congress did not make automatic assessments arising by operation of 19 C.F.R. § 353.53a(d)(1) subject to judicial review under 19 U.S.C. § 1516a, the Court finds Customs' actions with regard to such assessments to be analogous to Customs' actions in connection with assessments following § 751 determinations. The purpose of a § 751 review is to determine assessment rates for entries made during the period under review and to establish deposit rates for future entries covered by Commerce's outstanding antidumping duty order. *Zenith Radio Corp. v. United States*, 1 Fed.Cir. (T) 74, 75, 710 F.2d 806, 808 (1983). Once Commerce completes its § 751 review, Commerce instructs Customs to assess duties using the assessment rate Commerce determined in the review. *See* 19 C.F.R. § 353.22(c)(10) (1993). Likewise, absent a request for an administrative review, 19 C.F.R. § 353.-53a(d)(1) establishes assessment rates based on the deposit rates that Commerce establishes in its preliminary and final determinations and requires Commerce to instruct Customs to assess duties using those assessment rates. Customs' involvement in assessments pursuant to either a § 751 review or 19 C.F.R. § 353.53a(d)(1) is identical. The fact that § 353.53a(d)(1) obviates the need for Commerce to conduct an administrative review to determine the applicable assessment rates does not alter Customs' role or the distinction that Congress recognized between Customs' protestable decisions and its ministerial functions which only further Commerce's assessment determinations. *See* H.R. REP. No. 1235 at 44, *reprinted in* 1980 U.S.C.C.A.N. at 3756. As a result, the Court finds Congress did not intend to include Customs' assessments pursuant to § 353.-53a(d)(1) among the matters subject to protest under 19 U.S.C. § 1514. In short, merely because Commerce's regulation allows parties to subject themselves to § 353.-53a(d)(1)'s automatic assessment mechanism by deciding not to undergo a § 751 review does not permit parties to deviate from the strict procedural scheme that Congress has established for resolving antidumping disputes. Accordingly, the Court concludes plaintiff's protest which sought to challenge the application of the regulation was invalid *ab initio.*

The Court also finds plaintiff's reliance on *Nichimen* is misplaced. In *Nichimen*, the plaintiff imported television receivers that Commerce found to be subject to antidumping duties. 9 Fed.Cir. (T) at 104, 938 F.2d at 1287. After paying assessed duties, plaintiff filed a protest with Customs under § 1514(a) and subsequently filed suit in the CIT under § 1581(a). In its action before the CIT, plaintiff raised the following seven claims relating to Commerce's finding and Customs' subsequent liquidation: (1) Customs did not determine foreign market value and cost of production as required under 19 U.S.C. § 161 (1988); (2) the price of plaintiff's entries was no less than foreign market value or less than fair value; (3) the dumping determination underlying the duty assessment was arbitrary, capricious and an abuse of discretion, and not in accordance with law; (4) Commerce improperly applied the dumping findings to plaintiff; (5) all dumping duties on the entries had been settled under a settlement agreement entered into by the Attorney General, the Secretaries of Commerce and Treasury, and various importers, including the company for which plaintiff imported the merchandise; (6) Customs did not follow required appraisal procedures; and (7) Customs did not timely liquidate the entries. *Id.* at 104–05, 938 F.2d at 1287–88. The Federal Circuit held the first four items were not subject to protest with Customs under 19 U.S.C. § 1514 because they involve matters that plaintiff could have raised in a § 751 administrative review. *Id.* at 110, 938 F.2d at 1291–92. As to the remaining three items, the court held they were subject to protest under § 1514 and found Commerce could not have addressed them in a § 751 administrative review. *Id.* at 110–11, 938 F.2d at 1292.

In this action, plaintiff analogizes its challenge to the application of 19 C.F.R. § 353.-53a(d)(1) to the matters which the *Nichimen* court found were subject to protest. Based on *Nichimen*'s holdings, plaintiff argues because it could not have challenged the regulation's application in an administrative review, this action involves a protestable matter un-

der 19 U.S.C. § 1514(a) as to which the Court can exercise jurisdiction under 28 U.S.C. § 1581(a). Pl's Reply Br. at 18–19.

Contrary to plaintiff's argument, this Court does *not* construe *Nichimen* to hold 19 U.S.C. § 1514 allows Customs to hear protests involving *any* matter that a party could not have raised in a § 751 administrative review. In short, the Court finds the Federal Circuit did *not* reason, as plaintiff suggests, that because Commerce could not have addressed the *Nichimen*'s plaintiff's claims in a § 751 administrative review, the plaintiff could bring those same claims in the form of a protest under § 1514.

This Court interprets *Nichimen* to have relied exclusively on the statutorily-defined categories contained in § 1514(a) and to have determined some of plaintiff's claims fell under those categories. For example, with respect to plaintiff's fifth claim concerning the scope of the settlement agreement at issue, the Federal Circuit found the claim fell "within the general category of protestable matters set forth in 19 U.S.C. § 1514(a)(3). . . ." *Id.* at 110, 938 F.2d at 1292. The court noted "[b]ecause of the various parties and government representatives involved in the settlement, . . . Commerce should not under *the limited authority* of section 751 be considered the proper agency to interpret [the] agreement." *Id.*, 938 F.2d at 1292 (emphasis added). In addition, as to plaintiff's sixth and seventh claims pertaining to Customs' improper appraisal and

untimely liquidation, the *Nichimen* court determined "[t]hese are matters relating to the imposition of customs duties generally and not just to antidumping duties . . . [and] are squarely within subparagraphs (1) and (5) of the listing of protestable matters in 19 U.S.C. § 1514(a)." *Id.*, 938 F.2d at 1292.

In contrast to the claims addressed in *Nichimen* and as discussed previously, plaintiff's claims do not address actions by Customs that are protestable under § 1514. In sum, as noted above, the application of 19 C.F.R. § 353.53a(d)(1) simply does not involve a "decision" by Customs which Congress intended to be protestable. *See* H.R. REP. No. 1235 at 44, *reprinted in* 1980 U.S.C.C.A.N. at 3756. Moreover, to the extent plaintiff's claims address the deposit rates established by Commerce, plaintiff's ability to bring such claims in an action contesting Commerce's *Final Determination* under 19 U.S.C. § 1516a(a)(2)(B)(i),[4] or in a § 751 administrative review that would be subject to challenge under § 1516a(a)(2)(B)(iii) further distinguishes its claims from those addressed in *Nichimen.*[5] Accordingly, the Court finds *Nichimen* does not support plaintiff's assertion that it could challenge the application of § 353.53a(d)(1) in a protest under 19 U.S.C. § 1514 that would give this Court jurisdiction under 28 U.S.C. § 1581(a).

## B. *Application of 28 U.S.C. § 1581(i)*

 Plaintiff's second jurisdictional claim relies on 28 U.S.C. § 1581(i)(2). Section 1581(i) indicates the following:

**4.** *See Comeau Seafoods Ltd. v. United States,* 13 CIT 923, 929, 724 F.Supp. 1407, 1413 (1989) (In the context of a countervailing duty investigation, "[a]n interested party . . . may challenge Commerce's final determination in this Court, including the methodology employed, and have the results of any rate change apply prospectively to liquidations made pursuant to the final determination."); *Ipsco Inc. v. United States,* 12 CIT 676, 680–81, 692 F.Supp. 1368, 1372–73 (1988) (discussing the Court's ability to review deposit rates established in an "original determination" and noting the reviewed rates "should govern rates for a future period or periods"); *OKI Elec. Indus. Co. v. United States,* 11 CIT 624, 631–32, 669 F.Supp. 480, 485–86 (1987) (indicating a party may challenge deposit rates in an action initiated under 19 U.S.C. § 1516a(a)(2)(B)(i) and 28 U.S.C. § 1581(c) to contest a final affirmative antidumping duty determination and antidumping order); *Pistachio Group of the Ass'n of Food*

*Indus., Inc. v. United States,* 10 CIT 440, 445–46, 638 F.Supp. 1340, 1344 (1986) (addressing the Court's power in an action challenging a final determination to hear a party's attack against the basis upon which Commerce determined the party's dumping margin and resulting deposit rate).

**5.** Because § 751 enables Commerce to "review and determine . . . the amount of any antidumping duty" and requires the agency to establish deposit rates for subject entries, the statute clearly grants the agency the authority to hear challenges against deposit rates established in Commerce's preliminary and final determinations. *See* 19 U.S.C. § 1675(a)(1)(B), (a)(2); *see also Zenith,* 1 Fed.Cir. (T) at 75, 710 F.2d at 808 (one of the purposes of a § 751 review is to "establish[] the margins used to calculate the amount of dumping duties to be assessed on merchandise entered during the . . . period under review.").

(i) In addition to the jurisdiction conferred upon the Court of International Trade by subsections (a)–(h) of this section and subject to the exception set forth in subsection (j) of this section, the Court of International Trade shall have exclusive jurisdiction of any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for—

(1) revenue from imports or tonnage;

(2) tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue;

(3) embargoes or other quantitative restrictions on the importation of merchandise for reasons other than the protection of the public health or safety; or

(4) administration and enforcement with respect to the matters referred to in paragraphs (1)–(3) of this subsection and subsections (a)–(h) of this section.

This subsection shall not confer jurisdiction over an antidumping or countervailing duty determination which is reviewable either by the Court of International Trade under section 516A(a) of the Tariff Act of 1930 or by a binational panel under article 1904 of the United States–Canada Free–Trade Agreement and section 516A(g) of the Tariff Act of 1930.

Customs Court Act of 1980, Pub.L. No. 96–417, 94 Stat. 1728, as amended, 28 U.S.C. § 1581(i) (1988).

It is well-settled that litigants may not invoke jurisdiction under § 1581(i) "when jurisdiction under another subsection of § 1581 *is or could have been available,* unless the remedy provided under that other subsection would be manifestly inadequate." *Miller & Co. v. United States,* 5 Fed.Cir. (T) 122, 124, 824 F.2d 961, 963 (1987), *cert. denied,* 484 U.S. 1041, 108 S.Ct. 773, 98 L.Ed.2d 859 (1988) (emphasis added); *accord Conoco, Inc. v. United States Foreign–Trade Zones Bd.,* 16 CIT ——, ——, 790 F.Supp. 279, 288 (1992), *appeal docketed,* No. 92–1396 (Fed.Cir. June 8, 1992). This Court finds the remedies provided for in § 1581(a)–(h) are unavailable in an action challenging the application of 19 C.F.R. § 353.53a(d)(1). As dis-

cussed previously, § 1581(a) is inapplicable to actions challenging the regulation's application. Similarly, § 1581(c) cannot apply to such actions because the application of the regulation does "not culminate in a final determination enumerated in 19 U.S.C. § 1516a and contestable via 28 U.S.C. § 1581(c)." *Interredec, Inc. v. United States,* 11 CIT 45, 46 n. 1, 652 F.Supp. 1550, 1552 n. 1 (1987) (citing *Royal Business·Machs., Inc. v. United States,* 69 CCPA 61, 73–74, 669 F.2d 692, 701–02 (1982)) (other citations omitted). As none of the other remedies provided in § 1581(a)–(h) is relevant to this case and the application of 19 C.F.R. § 353.53a(d)(1) pertains to the "administration and enforcement" of the laws "providing for ... duties," the Court concludes an action challenging the regulation's application is reviewable under 28 U.S.C. § 1581(i)(2), (4). *Accord Krupp Stahl,* 15 CIT at 171; *Interredec,* 11 CIT at 46 n. 1, 652 F.Supp. at 1552 n. 1. Nevertheless, the Court also concludes plaintiff's failure to initiate its action within the time prescribed by 28 U.S.C. § 2636(h) (1988) and before Customs liquidated its entries precludes the Court from exercising jurisdiction in this case.

### 1. Statute of Limitations

■ The statute of limitations which applies to actions brought pursuant to § 1581(i) resides in 28 U.S.C. § 2636(h). This provision indicates the following:

A civil action of which the Court of International Trade has jurisdiction under section 1581 of this title, other than an action specified in subsections (a)–(h) of this section, is barred *unless commenced in accordance with the rules of the court within two years after the cause of action first accrues.*

28 U.S.C. § 2636(h) (1988) (emphasis added). According to the rules of this Court, a party commences an action pursuant to § 1581(i) "by filing concurrently with the clerk of the court a summons and complaint." USCIT R. 3(a); *cf.* 28 U.S.C. § 2632(a) (1988) (Except civil actions commenced under 28 U.S.C. § 1581(a), (b), "a civil action in the Court of International Trade shall be commenced by filing concurrently with the clerk of the court

a summons and complaint, with the content and in the form, manner, and style prescribed by the rules of the court."). In this case, plaintiff filed its summons on November 25, 1991 and its complaint on February 21, 1992. Plaintiff, therefore, commenced this action on February 21, 1992.

Having determined when plaintiff commenced its action, the Court must determine when plaintiff's cause of action accrued in order to determine whether plaintiff commenced its action within the time allowed by § 2636(h). In its papers, plaintiff did not address the statute of limitations issue under § 1581(i). During oral argument, however, plaintiff indicated its position was that its cause of action accrued the day Customs notified plaintiff that Customs had decided to deny plaintiff's protest. Tr. at 17–18. Plaintiff argued "[c]ase law states that the cause of action arises when the plaintiff knew or should have known about it," thereby suggesting plaintiff was unaware of whether it had a cause of action until December 10, 1991—the date on which Customs denied plaintiff's protest. *Id.* at 17.

Plaintiff's position is unpersuasive. It is well-settled "that a claim does not accrue until the aggrieved party reasonably should have known about the existence of the claim." *St. Paul Fire & Marine Ins. Co. v. United States,* 10 Fed.Cir. (T) ——, ——, 959 F.2d 960, 964 (1992) (citations omitted). Plaintiff's claim in this case pertains to the application of 19 C.F.R. § 353.53a(d)(1). The plain language of § 353.53a(d)(1) indicates the regulation applies once the period of time specified in Commerce's notice of opportunity to request an administrative review passes. The regulation indicates *"if the Secretary does not receive a timely request [for an administrative review], the Secretary, without additional notice, will instruct the Customs Service to assess antidumping duties on the merchandise."* § 353.53a(d)(1) (emphasis added). Because the period of time specified in Commerce's *Administrative Review Notice* allowed plaintiff to request an administrative review through June 30, 1987 and neither plaintiff nor any other interested party requested an administrative review by

that time, § 353.53a(d)(1) became operable on July 1, 1987.[6] Because the terminology contained in both the regulation and the *Administrative Review Notice* put plaintiff on notice that its subject entries would be subject to the regulation's automatic assessment mechanism beginning July 1, 1987, the Court finds plaintiff "reasonably should have known about the existence of [its] claim" on that date. *St. Paul,* 10 Fed.Cir. (T) at ——, 959 F.2d at 964. Accordingly, the Court concludes plaintiff's cause of action accrued and the statute of limitations in 28 U.S.C. § 2636(h) began to run on July 1, 1987, the day following the last day on which plaintiff could have requested an administrative review.

■ The Court also finds plaintiff's decision to invoke Customs' protest procedures under 19 U.S.C. § 1514 did not affect the accrual of its cause of action. Although the type of claim that a party raises and the availability of administrative remedies may affect the accrual of the party's cause of action under 28 U.S.C. § 1581(i), a party's decision to pursue *"permissive administrative remedies does not toll running of the statute of limitation[s] or delay accrual of the cause of action."* *Omni U.S.A., Inc. v. United States,* 11 CIT 480, 483 n. 7, 663 F.Supp. 1130, 1133 n. 7 (1987), *aff'd,* 6 Fed. Cir. (T) 99, 840 F.2d 912, *cert. denied,* 488 U.S. 817, 109 S.Ct. 56, 102 L.Ed.2d 34, *reh'g denied,* 488 U.S. 961, 109 S.Ct. 405, 102 L.Ed.2d 393 (1988) (citing *Lipp v. United States,* 157 Ct.Cl. 197, 301 F.2d 674, *cert. denied,* 373 U.S. 932, 83 S.Ct. 1540, 10 L.Ed.2d 691 (1962)) (emphasis added). The need for finality, which the foregoing principle furthers, becomes more pronounced when a party pursues an administrative remedy that is unavailable as a matter of law. *Cf. Pope Prods. v. United States,* 15 CIT 484, 487, 1991 WL 191223 (1991) ("Assuming, *arguendo,* that the running of the statutory time limit may be tolled during certain types of administrative review proceedings, *it is determinative that the final administrative petition in this case was a nonreviewable supplemental petition for mitigation and that judicial review was available prior to*

---

6. *See Administrative Review Notice,* 52 Fed.Reg. at 21,338.

*completion of this administrative step.")* (emphasis added).

This latter scenario characterizes plaintiff's conduct in this case. As discussed previously, Customs' actions with respect to the application of 19 C.F.R. § 353.53a(d)(1) were not subject to protest. As a result, the protest remedy provided in 19 U.S.C. § 1514 was unavailable to plaintiff as a matter of law. Because plaintiff chose to pursue a remedy that Congress did not make available for claims such as plaintiff's, the Court finds plaintiff's protest neither delayed the accrual of plaintiff's cause of action nor tolled the statute of limitations which had began to run on July 1, 1987. *See Pope Prods.,* 15 CIT at 486–87. In sum, as plaintiff commenced its action on February 21, 1992, more than four and one half years after its cause of action accrued, the Court concludes *its action is barred by the two-year statute of limitation contained in 28 U.S.C. § 2636(h).*[7]

2. Customs' Liquidation

■ Plaintiff's failure to seek injunctive relief against liquidation before commencing this action also precludes this Court from exercising jurisdiction under 28 U.S.C. § 1581(i). This Court has the authority under § 1581(i) to review requests for injunctions against liquidations pursuant to 19 C.F.R. § 353.53a(d)(1). *Krupp Stahl,* 15 CIT at 171; *Interredec,* 11 CIT at 46 n. 1, 652 F.Supp. at 1552 n. 1. Moreover, because an injunction would prevent Customs from liquidating plaintiff's entries and thereby ensure a party would be able to benefit from judicial review of its challenge to the regulation, such relief would seem appropriate. *Cf. Zenith,* 1 Fed.Cir. (T) at 77–80, 710 F.2d at 810 (A party who wishes to challenge a § 751 determination will suffer irreparable harm if Customs liquidates their entries before the party obtains judicial review because "[t]he statutory scheme has no provision permitting reliquidation" and, therefore, renders the court "powerless to grant the only effective remedy in response" to the party's challenge.). Yet, as the *Zenith* court noted with respect to

liquidations following administrative reviews, "[t]he statutory scheme has no provision permitting reliquidation" and "[o]nce liquidation occurs, a subsequent decision by the trial court on the merits ... can have no effect on the dumping duties assessed on [subject] entries." *Id.* at 78, 710 F.2d at 810. In this case, Customs' liquidation precludes the Court from granting plaintiff the relief it now seeks. Accordingly, the Court concludes it is unable to exercise jurisdiction over this action under § 1581(i).

IV. CONCLUSION

After considering all of plaintiffs' arguments, the Court makes the following holdings: (1) plaintiff did not file a valid protest under 19 U.S.C. § 1514 that would create subject matter jurisdiction in the CIT pursuant to 28 U.S.C. § 1581(a); (2) the CIT has jurisdiction under 28 U.S.C. § 1581(i)(2), (4) to review a challenge to the application of 19 C.F.R. § 353.53a(d)(1); (3) this Court cannot exercise subject matter jurisdiction under § 1581(i) over this action because plaintiff failed to commence the action within the time allowed by 28 U.S.C. § 2636(h); and (4) this Court cannot exercise subject matter jurisdiction under § 1581(i) over this action as Customs had already liquidated plaintiff's entries at the time when plaintiff commenced its action.

***ORDER***

**ORDERED** this case is dismissed.

---

7. Even assuming the regulation did not operate against plaintiff until October 21, 1988, the date on which Customs liquidated plaintiff's entries, § 2636(h) would nevertheless bar plaintiff's action. As plaintiff filed its action three years and four months after liquidation, on February 21, 1992, the two-year statute of limitations precludes plaintiff's suit.