125 F.3d 1457
 19 ITRD 1545
 PENTAX CORPORATION, Asahi Optical Co., Ltd., and Asahi
Optical (International), Ltd., Plaintiffs-Appellants,
v.
Lewellyn ROBISON, Area Port Director, Portland, Oregon,
United States Customs Service, and the United
States, Defendants-Appellees.
 No. 96-1320.
 United States Court of Appeals,
Federal Circuit.
 Sept. 17, 1997.
 
 Charles H. Bayar, of New York City, argued for plaintiffs-appellants.
 Elizabeth W. Newsom, Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC, argued for defendants-appellees. With her on the brief were Frank W. Hunger, Assistant Attorney General, David M. Cohen, Director, and A. David Lafer, Senior Trial Counsel. Of counsel on the brief were Saul N. Perla, Kathleen Bucholtz, and Dyann Medina, Associate Chief Counsel, United States Customs Service, of Chicago, IL. Counsel is Kenneth M. Dintzer, Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC.
 Before RICH, SCHALL, and BRYSON, Circuit Judges.
 SCHALL, Circuit Judge.
 
 
 1
 This case relates to the marking of imported goods with the country of origin pursuant to 19 U.S.C. § 1304(a) (1988).[1] Pentax Corporation ("Pentax"), Asahi Optical Co., Ltd. ("AOC"), and AOC's wholly-owned subsidiary, Asahi Optical (Int'l), Ltd. ("AOI"), (collectively "plaintiffs"), appeal from the April 15, 1996 partial judgment of the United States Court of International Trade, as amended nunc pro tunc on March 10, 1997, in favor of Lewellyn Robison, United States Customs Service ("Customs"), and the United States (collectively "the government") in Pentax Corp. v. Robison, Slip Op. 96-64 (Ct. Int'l Trade Apr. 15, 1996), amended by Pentax Corp. v. Robison, Consol., Court No. 96-01-00067 (Ct. Int'l Trade Mar. 10, 1997). The court's decision upheld the determination of Customs that violations of 19 U.S.C. § 1592, arising from the marking of goods from the People's Republic of China as originating from Hong Kong, resulted in $5,157,601.30 ($5.2 million) in "actual loss of marking duties" under 19 U.S.C. § 1304(f). Id. at 18. Based on this determination, the court denied plaintiffs' motion to enjoin the government from requiring Pentax, as importer of the goods, to tender the $5.2 million in order for Pentax to qualify for prior disclosure treatment under § 1592(c)(4) that would mitigate the penalty for false marking. Id. We reverse.
 
 BACKGROUND
 I.
 
 2
 Pursuant to 19 U.S.C. § 1304(a), goods imported into the United States are required to be marked with their country of origin. Customs may impose a variety of sanctions when the marking requirement is not met. For example, and of relevance here, an entity violating section 1304(a) shall have levied against it a 10 percent ad valorem duty in accordance with 19 U.S.C. § 1304(f), which provides, in pertinent part:
 
 
 3
 (f) Additional duties for failure to mark
 
 
 4
 If at the time of importation any article ... is not marked in accordance with the requirements of this section, and if such article is not exported or destroyed or ... marked after importation in accordance with the requirements of this section ..., there shall be levied, collected, and paid upon such article a duty of 10 per centum ad valorem, which shall be deemed to have accrued at the time of importation, shall not be construed to be penal, and shall not be remitted wholly or in part nor shall payment thereof be avoidable for any cause....
 
 
 5
 19 U.S.C. § 1304(f). Section 1592(d) permits Customs to recover unpaid marking duties after liquidation is final pursuant to 19 U.S.C. § 1514.[2] Section 1592(d) provides in full:
 
 
 6
 (d) Deprivation of lawful duties
 
 
 7
 Notwithstanding section 1514 of this title, if the United States has been deprived of lawful duties as a result of a violation of subsection (a) of this section, the appropriate customs officer shall require that such lawful duties be restored, whether or not a monetary penalty is assessed.
 
 
 8
 The prior disclosure provision of section 1592(c)(4) serves to limit the penalties assessed pursuant to sections 1592(c)(1)-(3) for mismarking resulting from fraud, gross negligence or, at a minimum, negligence. The statutory scheme is as follows:
 
 
 9
 Section 1592(a) provides, in pertinent part:
 
 
 10
 (a) Prohibition
 
 
 11
 (1) General Rule
 
 
 12
 Without regard to whether the United States is or may be deprived of all or a portion of any lawful duty thereby, no person, by fraud, gross negligence, or negligence--
 
 
 13
 (A) may enter, introduce, or attempt to enter or introduce any merchandise into the commerce of the United States by means of--
 
 
 14
 (i) any document, written or oral statement, or act which is material and false, or
 
 
 15
 (ii) any omission which is material,....
 
 
 16
 Sections 1592(c)(1)-(3) set the maximum penalties for culpable mismarking as follows:
 
 
 17
 (c) Maximum penalties
 
 
 18
 (1) Fraud
 
 
 19
 A fraudulent violation of subsection (a) of this section is punishable by a civil penalty in an amount not to exceed the domestic value of the merchandise.
 
 
 20
 (2) Gross Negligence
 
 
 21
 A grossly negligent violation of subsection (a) of this section is punishable by a civil penalty in an amount not to exceed--
 
 
 22
 (A) the lesser of--
 
 
 23
 (i) the domestic value of the merchandise, or
 
 
 24
 (ii) four times the lawful duties of which the United States is or may be deprived, or
 
 
 25
 (B) if the violation did not affect the assessment of duties, 40 percent of the dutiable value of the merchandise.
 
 
 26
 (3) Negligence
 
 
 27
 A negligent violation of subsection (a) of this section is punishable by a civil penalty in an amount not to exceed--
 
 
 28
 (A) the lesser of--
 
 
 29
 (i) the domestic value of the merchandise, or
 
 
 30
 (ii) two times the lawful duties of which the United States is or may be deprived, or
 
 
 31
 (B) if the violation did not affect the assessment of duties, 20 percent of the dutiable value of the merchandise.
 
 
 32
 19 U.S.C. § 1592(c)(1)-(3). Finally, section 1592(c)(4), the section central to this case, caps the maximum penalties otherwise assessed under section 1592(c) if the concerned entity brings the mismarking to the attention of Commerce. The subsection provides, in pertinent part:
 
 
 33
 (4) Prior disclosure
 
 
 34
 If the person concerned discloses the circumstances of a violation of subsection (a) before, or without knowledge of, the commencement of a formal investigation of such violation, with respect to such violation, merchandise shall not be seized and any monetary penalty to be assessed under subsection (c) of this section shall not exceed--
 
 
 35
 (A) if the violation resulted from fraud--
 
 
 36
 (i) an amount equal to 100 percent of the lawful duties of which the United States is or may be deprived, so long as such person tenders the unpaid amount of lawful duties at the time of disclosure or within thirty days, or such longer period as the appropriate customs officer may provide, after notice by the appropriate customs officer of his calculation of such unpaid amount, or
 
 
 37
 (ii) if such violation did not affect the assessment of duties, 10 percent of the dutiable value; or
 
 
 38
 (B) if such violation resulted from negligence or gross negligence, the interest ... on the amount of lawful duties of which the United States is or may be deprived so long as such person tenders the unpaid amount of the lawful duties at the time of disclosure or within 30 days, or such longer period as the appropriate customs officer may provide, after notice by the appropriate customs officer of his calculation of such unpaid amount....
 
 
 39
 19 U.S.C. § 1592(c)(4).
 
 
 40
 Our task here is to determine whether the ad valorem duties assessed pursuant to section 1304(f) are duties of which the government has been deprived "as a result of a violation of" section 1592(a), 19 U.S.C. § 1592(d), thus making them duties that must be tendered by Pentax before it can qualify for "prior disclosure" treatment under 19 U.S.C. § 1592(c)(4).
 
 II.
 
 41
 Pentax imports and distributes photographic and optical equipment and accessories from AOC, located in Japan, and AOI, located in Hong Kong. Pentax, No. 96-64, slip op. at 2. Beginning in 1972, Pentax imported into the United States products manufactured by AOI and marked by AOI under section 1304(a) as originating from Hong Kong. Id. During the same time frame, however, AOI shifted production of certain goods from Hong Kong to the People's Republic of China. Id. AOI did not change the marking of the goods, however, and Pentax imported them with markings indicating that they were made in Hong Kong. Id. at 3.
 
 
 42
 On October 29, 1990, Customs notified Pentax of its intention to audit Pentax, AOI, and AOC. Id. On March 11, 1991, Pentax, seeking to mitigate any penalties for violating section 1592(a) with the favorable treatment provision of 19 U.S.C. § 1592(c)(4), informed Customs that, between 1987 and 1991, it had imported falsely marked camera equipment. Id. On May 22, 1991, Customs determined that the disclosed violation amounted to $5.2 million in "actual loss of marking duties" under 19 U.S.C. § 1304(f) (the "Determination"). Pentax, No. 96-64, slip op. at 4. Accordingly, Customs informed Pentax that, in order to qualify for prior disclosure treatment, it would be required to tender marking duties in the amount of $5.2 million. Id. at 5. Pentax objected to Customs' construction of 19 U.S.C. § 1592(c)(4). Id. The parties were unable to resolve the issue.
 
 
 43
 On June 20, 1991, Pentax requested review of the Determination. Id. Customs confirmed the Determination on November 20, 1991, and reconfirmed its decision on April 20, 1992. Id. Thereafter, Pentax filed a civil action in the United States District Court for the District of Montana seeking immediate review of the Determination under the Administrative Procedure Act, 5 U.S.C. §§ 701-706, and seeking a preliminary injunction against enforcement of the Determination pending such review. Pentax, No. 96-64, slip op. at 6. That action (the "pre-enforcement" action) was transferred to the Court of International Trade on January 12, 1996. Id. at 7. AOC and AOI also filed an action in the Court of International Trade, seeking an injunction and review of the Determination. The court entered a temporary restraining order against enforcement of the Determination, which was continued and amended during the proceedings.
 
 
 44
 On February 13, 1996, the government initiated an enforcement action (the "enforcement action") in the Court of International Trade pursuant to 28 U.S.C. § 1582, claiming civil penalties and restitution of duties from Pentax, AOI, and AOC for violations of section 1592. Id. at 8. After initiating its action, the government moved to dismiss the Pentax, AOI and AOC actions on the ground that the court lacked jurisdiction to entertain importer-initiated pre-enforcement actions arising under 19 U.S.C. § 1592. It was the government's position that the statutory scheme required plaintiffs to assert all their grievances in the government's enforcement action.
 
 
 45
 The next day, plaintiffs applied for a preliminary injunction against enforcement of the Determination pending the court's decision on the section 1592(c)(4) prior disclosure claim. On April 2, 1996, thirteen days before answers were due in the enforcement action, the court consolidated the enforcement action with plaintiffs' pre-enforcement actions (resulting in the "consolidated action") and directed that "[a]ll papers filed in one case, will be deemed filed in the other cases."
 
 
 46
 On April 15, 1996, the Court of International Trade upheld Customs' Determination. Pentax, Slip. Op. 96-64 at 19. The court held that marking duties are "lawful duties" subject to recovery under sections 1592(c)(4) and (d). Id. at 17-19. The court concluded that the initial section 1592 violation, as well as the continuation of the violation, resulting from Pentax's failure to disclose the mismarking to Customs, caused the loss of marking duties. Id. at 18. The court stated:
 
 
 47
 [t]o receive prior disclosure treatment, within ten days hereof plaintiffs must authorize the release of the funds in the court's control [viz., the $5.2 million in issue with accrued interest] to Customs. The preliminary injunction will expire at such time.
 
 
 48
 Id. at 19.
 
 
 49
 On April 22, 1996, the court entered partial judgment pursuant to CIT R. 54(b) and issued an order in the consolidated action, which stated:
 
 
 50
 [T]he court, in Slip Op. 96-64 (Apr. 15, 1996) ha[d] finally decided the merits of the "prior disclosure" issue, viz., that Plaintiffs must tender certain marking duties as a precondition for prior disclosure treatment under [section] 1592(c)(4), but [had not] adjudicated all the claims or the rights and liabilities of all the parties in this consolidated action, yet there [was] no just reason for delay in entry of final judgment on the "prior disclosure" issue pursuant to USCIT R. 54(b) or for any consequent delay in permitting Plaintiffs to appeal the Court's decision to [this Court] as of right under 28 U.S.C. § 1295(a)(5), [and therefore]
 
 
 51
 ORDERED that, pursuant to USCIT R. 54(b), the Clerk of the Court shall enter final judgment in this action on the "prior disclosure" issue in accordance with Slip. Op. 96-64 (Apr. 15, 1996); and ... further
 
 
 52
 ORDERED that the Defendants and their officers, agents, employees, attorneys, successors and assignees are hereby enjoined, until C.O.B. Tuesday, April 30, 1996, from taking any action whatsoever to apply or enforce, or attempt to apply or enforce against Plaintiffs or any of their officers, employees, agents, sureties, successors and assignees, any deadline for voluntary compliance with the Determination....
 
 
 53
 This appeal from the partial judgment in the consolidated action followed; we granted plaintiffs' motion for an injunction pending this appeal.
 
 
 54
 Although the government, in its original brief, took the position that the Court of International Trade had jurisdiction to review the issues presented in the appeal as part of the government's enforcement action, and stated that it was not challenging "the CIT's jurisdiction to render a decision on the issues presented in this appeal," government counsel stated at oral argument that it appeared that the Court of International Trade may have entered its Rule 54(b) judgment in error. Counsel thus expressed concern with respect to our jurisdiction to entertain the interlocutory appeal. As a result, we requested further briefing on the jurisdictional issue.
 
 
 55
 On March 10, 1997, upon plaintiffs' consent motion, the Court of International Trade amended its April 22, 1996 order nunc pro tunc. It entered a new judgment stating:
 
 
 56
 [i]n accordance with, and on the grounds set forth in, Slip Op. 96-64 ...
 
 
 57
 ORDERED, ADJUDGED and DECREED that [Pentax] must pay defendant U.S. Customs Service $5,157,601.30 in "actual loss of duties," plus accrued interest, as a precondition for "prior disclosure" treatment under 19 U.S.C. § 1592(c)(4).
 
 
 58
 On March 14, 1997, plaintiffs filed an amended notice of appeal from the final judgment and the corrected April 22, 1996 order.
 
 DISCUSSION
 I.
 
 59
 Before addressing the merits, we must resolve the jurisdictional issue raised by the government. We review jurisdictional issues de novo. Nichimen Am., Inc. v. United States, 938 F.2d 1286, 1288-89 (Fed.Cir.1991).
 
 
 60
 There are two possible statutory bases for our jurisdiction to entertain this case. First, we may have exclusive jurisdiction over an appeal as a final decision of the Court of International Trade pursuant to 28 U.S.C. § 1295(a)(5) (1994). Second, we may possess jurisdiction to review the court's denial of a preliminary injunction pursuant to 28 U.S.C. § 1292(c)(1) (1994). Regardless of the basis of our jurisdiction, we cannot uphold the court's determinations unless the claims were properly before it.
 
 
 61
 The government argues that this court's jurisdiction can only derive from section 1292 because, although the Court of International Trade's denial of a preliminary injunction is properly before this court, a "final decision" is not. For their part, plaintiffs contend that we have jurisdiction under both sections 1295(a)(5) and 1292(c)(1) because the court's March 11, 1997 judgment finally resolved the section 1592(c)(4) claim and because the court's April 22, 1996 order denied plaintiffs' request for a preliminary injunction. Because the parties agree that we have jurisdiction pursuant to section 1292, we need not entertain arguments relating to other possible statutory bases for jurisdiction.
 
 
 62
 We next address the government's contention that we should affirm the decision of the Court of International Trade denying injunctive relief on the narrow ground that denial of the request for an injunction was proper because the court lacked power to issue an injunction. Thus, the government urges us not to reach the merits. We review de novo whether the Court of International Trade had jurisdiction. Guess? Inc. v. United States, 944 F.2d 855, 857 (Fed.Cir.1991). The United States Court of International Trade is a court of limited jurisdiction. Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 701, 102 S.Ct. 2099, 2103-04, 72 L.Ed.2d 492 (1982) (stating that the jurisdiction of the Court of International Trade is "limited to those subjects encompassed within a statutory grant of jurisdiction"). Once jurisdiction is challenged, the plaintiff bears the burden of proving that the court's jurisdiction is invoked properly. Lowa, Ltd. v. United States, 561 F.Supp. 441, 443 (CIT 1983), aff'd, 724 F.2d 121 (Fed.Cir.1984) (noting that "when a jurisdictional issue is raised, 'the burden rests on plaintiff to prove that jurisdiction exists.' " (citation omitted)). We conclude that plaintiffs have satisfied that burden.
 
 
 63
 Regardless of whether the Court of International Trade had jurisdiction over Pentax's pre-enforcement action, the court's April 2, 1996 order consolidated plaintiffs' claims into the enforcement action commenced by Commerce. In that context, the court directed that "[a]ll papers filed in one case, will be deemed filed in the other cases." Therefore, without reaching the issue of whether the consolidation was a proper exercise of the court's power if the court did not previously have jurisdiction over plaintiffs' action, we conclude that plaintiffs could reasonably have concluded that their original claims were constructive counterclaims in the new "consolidated" action. Cf. Spraytex, Inc. v. DJS&T, 96 F.3d 1377, 1382 (Fed.Cir.1996) ("For purposes of appellate jurisdiction, actions consolidated by a district court are not unlike multiple claims and counterclaims presented in one action."). Given the court's directive, we could neither expect nor require plaintiffs to have asserted counterclaims in order to preserve their claims. Therefore, because we view plaintiffs' original claims as constructive counterclaims, and because the enforcement action was properly before the Court of International Trade pursuant to the court's jurisdiction under 28 U.S.C. §§ 1582(1) & (3) (1994), which permit the court to hear the government's claims for section 1592(c) penalties and section 1592(d) duties, we hold that the court had jurisdiction to adjudicate plaintiffs' claims. We thus turn to the merits.
 
 II.
 
 64
 Plaintiffs argue that the government cannot require them, as a precondition for prior disclosure treatment for Pentax, to tender ad valorem duties that arise under section 1304(f). First, they argue that the ad valorem duties are not duties of which the government was deprived as a result of a section 1592(a) violation and are not the duties required to be tendered under § 1592(c)(4). Second, they argue that the finality of liquidation bars the government from collecting ad valorem duties and that section 1592(d) does not trump such finality. Both arguments present issues of statutory interpretation, which we review de novo. ITT Corp. v. United States, 24 F.3d 1384, 1386-87 (Fed.Cir.1994). We resolve the case on the basis of the first argument asserted by Pentax.
 
 
 65
 In addressing the issue of whether ad valorem marking duties must be tendered before Pentax is entitled to receive prior disclosure treatment, we find instructive the regulations that speak to the prior disclosure requirement. These regulations state that "[a] person who discloses the circumstances of the violation shall tender actual loss of duties at the time of disclosure ...," 19 C.F.R. § 162.74(h) (1996), where "loss of duties" is further defined as "the duties of which the Government has been deprived by reason of the violation in respect of entries on which liquidation has become final." Id. at § 162.71(a)(1).
 
 
 66
 We interpret the section 1592(d) causation requirement as requiring nothing less than but-for causation. We agree with plaintiffs that the government was not deprived of the § 1304(f) ad valorem duties "as a result of the section 1592(a) violation," as required by section 1592(d), because it is not the case that the section 1304(f) violation would not have occurred but for the section 1592(a) violation. Section 1592(a) prohibits misrepresentations resulting from misconduct--fraud, gross negligence, or negligence. Thus, the actions that violate § 1592(a) are the acts of fraudulently or negligently mismarking imported goods. If the act of culpably mismarking the goods deprived the government of duties, for example, if the goods were marked with a country of origin having a lower duty than the country from which the goods actually originated, then those duties of which the government was deprived are of the type whose tender is required for prior disclosure treatment. We hold that the 10 percent ad valorem mismarking duties do not fall into this category.
 
 
 67
 The act of culpably mismarking goods cannot be said to have deprived the government of the 10 percent ad valorem duty assessed under 1304(f). To the contrary, but for the mismarkings (followed by the failure to export, destroy, or remark the articles in accordance with section 1304), the duty could not have arisen. Thus, the proper characterization of the relationship between sections 1304(f) and 1592(d) is that the two sections are coupled only to the extent that the act of mismarking can give rise to a violation of both sections--section 1304(f) if the mismarking is not cured, and 1592(d) if the mismarking occurred as a result of fraud, gross negligence or negligence.
 
 
 68
 Having concluded that plaintiffs are not required to tender the 10 percent ad valorem marking duties that arise under section 1304(f) to receive prior disclosure treatment, we need not address plaintiffs' argument that the government is barred from collecting ad valorem duties after liquidation.
 
 CONCLUSION
 
 69
 For the foregoing reasons, the decision of the Court of International Trade is reversed.
 
 COSTS
 
 70
 Each party shall bear its own costs.
 
 REVERSED
 
 
 [1]
 The 1988 version of the United States Code contains the statutory provisions which were in effect at the time of the events in question. Unless otherwise indicated, all references are to the 1988 version of the Code
 
 
 [2]
 Section 1514 provides, in pertinent part:
 (a) Finality of decisions; return of papers
 Except as provided in subsection (b) of this section, section 1501 of this title ..., section 1516 of this title ..., section 1520 of this title ..., and section 1521 of this title ..., decisions of the appropriate customs officials, including the legality of all orders and findings entering into the same, as to--
 ...
 (5) the liquidation or reliquidation of an entry, or any modification thereof ...
 shall be final and conclusive....
 19 U.S.C. § 1514.