**BRIDALANE FASHIONS, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**Slip Op. 98–157.
Court No. 98–07–02459.**

United States Court of
International Trade.

Nov. 23, 1998.

*Sullivan & Lynch, P.C. (Herbert J. Lynch)* for plaintiff.

*Frank W. Hunger,* Assistant Attorney General, *Joseph I. Liebman,* Attorney in Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, United States Department of Justice (*Amy M. Rubin* ), *Michael D. Bunker,* Office of Associate Chief Counsel, United States Customs Service, of counsel, for defendant.

## *OPINION*

RESTANI, Judge:

This matter is before the court on defendant's motion to dismiss for lack of jurisdiction. It involves the very unsettled legal landscape with regard to jurisdiction over suits by importers to recover or avoid Customs duties or penalties based on 19 U.S.C. § 1592 (1994).

### *FACTS*

Plaintiff Bridalane is a Canadian corporation located in Montreal, Quebec, Canada. Between September 28, 1993 and October 29, 1996, Bridalane imported 862 entries of wedding gowns into the United States (the "imported merchandise") that had been manufactured in the Far East. *Pl.'s Br.,* at 1. The imported merchandise entered the United States either at the Port of Champlain, New York (835 entries), or at Louisville, Kentucky (27 entries). *Compl.,* Ex. C at 2 (Pre-penalty notice). Because these importations were processed by Bridalane's customs brokers, the brokers are listed as the importers of record on the entries and Bridalane is listed as the ultimate consignee. *See Compl.,* Ex. A at 5. At the time of the importations, the imported merchandise was incorrectly designated as a product of Canada and entered at reduced duty rates under the United States/Canada Free Trade Agreement ("CFTA") or the North American Free Trade Agreement ("NAFTA"). In addition, the merchandise was improperly marked to indicate the country of origin as Canada rather than China, Taiwan, or Thailand. *Compl.,* Ex. A at 5. As a result of the improper marking, the United States asserts Bridalane became liable, under 19 U.S.C.A. § 1304(h)(West Supp.1998), for marking duties in the amount of 10 percent of the value of the merchandise.

By letter dated October 28, 1996, Bridalane, through its attorney, informed Customs that "errors [were] made by [Bridalane] in importing and causing to be imported merchandise at the Port of Champlain, New York." *Compl.,* Ex. A at 1. In its letter, Bridalane stated:

> Upon review of its import records and consultation with Counsel, Bridalane determined that merchandise exported to the United States from Canada was incorrectly declared to be originating goods pursuant to NAFTA and CFTA. Further, pursuant to the Customs Rules of Origin, the subject wedding gowns are considered for Customs purposes to be country of origin China, Taiwan or Thailand depending upon the circumstances. Textile Declarations executed by Bridalane incorrectly stated that the merchandise was of Canadian origin. As a result of the aforementioned, duty was incorrectly paid under the NAFTA or CFTA special duty rates; and Textile Visas as required by the Bilateral Trade in Textiles Agreement which the United States has with the country(s) of origin; were not filed with the Customs Service at the time of entry.

*Id.* at 2.

Bridalane requested that Customs consider its October 28 letter a prior disclosure, as provided under 19 C.F.R. Parts 162 and 171 (1998). *Id.* at 3. Also, Bridalane stated that, whether or not agreement could be reached on the amount of duties owing as a result of the disclosed violations, it would "tender the amount calculated by the Port Director and utilize the administrative remedies of Part 174 of the Customs Regulations for relief." *Id.*

On June 18, 1997, Customs issued a pre-penalty notice advising Bridalane that it was contemplating the issuance of a penalty in an amount up to $229,444.60 (two times the loss of revenue), pursuant to 19 U.S.C. § 1592, based upon the above-described violations. *Compl.,* Ex. C at 2. In this pre-penalty notice, Customs informed Bridalane of Cus-

toms' calculation of the loss of revenue resulting from Bridalane's violations of Section 1592(a):

| | |
|---|---|
| Regular Customs Duties | $ 31,339.24 |
| Merchandise Processing Fees (MPF) | 20,655.96 |
| Marking Duties | 62,727.10 |
| TOTAL | $114,722.30 |

*Id.* at 3.

Of the $114,722.30 "loss of revenue" demanded by the Customs Service, plaintiff alleges only $601.61 in Customs duties and $1,400.90 in disputed marking duties relate to consumption entries which benefited from the preferential duty rate provided for in the CFTA and that the remainder relate to NAFTA. *Pl.'s Br.*, at 5.

Customs also informed Bridalane that, if all unpaid duties and fees were tendered to Customs within 30 days (*see* 19 C.F.R. 162.74(h)(1998)), Bridalane's October 28, 1996 letter would be considered a valid prior disclosure, in which case the proposed penalty amount would be amended to reflect a penalty limited to the amount of the interest due on the actual loss of revenue. *Compl.*, Ex. C at 3; *see* 19 U.S.C. § 1592(c) and 19 C.F.R. part 171, App. B. In response to Customs' June 18, 1997 letter, Bridalane tendered to Customs the regular Customs duties and the MPF in the amount of $51,995.20, but questioned the applicability of marking duties in a prior disclosure case in light of the then-pending action in *Pentax Corp. v. Robison*, 125 F.3d 1457 (Fed.Cir.1997), *amended on reh'g, in part,* 135 F.3d 760 (Fed.Cir.1998). *Compl.*, Ex. D at 2. Bridalane contended that a decision in *Pentax* would "be dispositive as to the appropriateness of the assessment of Marking Duties on liquidated Consumption Entries in a Prior Disclosure case." *Id.* In response to Bridalane's claim, Customs agreed to hold the matter in abeyance until a decision in the *Pentax* case was issued.

On September 17, 1997, the Court of Appeals for the Federal Circuit issued its deci-sion in *Pentax,* in which it held that the plaintiff in that case was "not required to tender the 10 percent ad valorem duties that [arose] under Section 1304(f) to receive prior disclosure treatment." *Pentax Corp.,* 125 F.3d at 1463. Accordingly, by letter dated September 23, 1997, Bridalane, through its counsel, corresponded with Customs and asserted that the decision of the Court of Appeals for the Federal Circuit in *Pentax* was dispositive as to the issue of whether Bridalane owed marking duties under its prior disclosure. *Compl.*, Ex. E at 2. Bridalane further requested that its prior disclosure be considered complete with the prior tender of $51,995.20. *Compl.*, at 5. By letter, dated February 5, 1998, Customs renewed its request that Bridalane deposit $62,727.10 in marking duties to perfect its prior disclosure. *Compl.*, Ex. F. By letter dated February 16, 1998, Bridalane, through its counsel, again requested that the Customs Service review its position in light of the *Pentax* decision. *Compl.*, Ex. G at 1. Customs agreed. By letter, dated June 8, 1998, Customs advised that it remained Customs' position that Bridalane owes marking duties in the amount of $62,727.10. *Compl.*, Ex. H. Notwithstanding the *Pentax* decision, in the June 8, 1998 letter, Customs notified Bridalane of its position that when there is both a false marking on the goods and false country of origin declared on the entry documents, marking duties must be tendered to perfect a prior disclosure claim.[1] Accordingly, Customs demanded that Bridalane tender the marking duties within 10 days of its receipt of the June 8 letter. *Id.* Customs subsequently granted Bridalane an additional extension of the time period to July 8, 1998 in which marking duties could be tendered for prior disclosure purposes. *Def.'s Br.*, at 7.

Bridalane commenced this action in this court on July 8, 1998 and requested leave of

---

1. Customs' position that the *Pentax* decision is not dispositive of the issue of whether marking duties are required to be tendered to perfect a prior disclosure in the instant case is premised, in part, on the opinion rendered by the Court of Appeals for the Federal Circuit in response to the Government's motion for rehearing in *Pentax*. See *Pentax Corp. v. Robison*, 135 F.3d 760 (Fed. Cir.1998). Upon rehearing, the Federal Circuit expressly declined to address the Government's theory that the submission of false entry documents in *Pentax* constituted a separate violation of 19 U.S.C. § 1592(a), thereby providing an independent basis for recovering marking duties pursuant to 19 U.S.C. § 1592(d) and for requiring payment of the duties as a prerequisite for prior disclosure treatment. *Pentax*, 135 F.3d at 762.

the court to deposit the $62,727.10 in controversy with the Clerk of Court pursuant to the provisions of Rule 67 of the Rules of the U.S. Court of International Trade. On July 9, 1998, Customs issued Bridalane a notice of penalty in the amount of $229,444.60 pursuant to 19 U.S.C. § 1592 for violation of various provisions of the relevant statutes and Customs regulations. *Pl.'s Br.*, at 4. The notice of penalty asserted that Bridalane's actions were negligent within the meaning of 19 U.S.C. § 1592. *Id.*

### THE STATUTE

Section 1592(a) of Title 19 makes it a violation for an importer to enter or introduce merchandise into the United States by means of a materially false statement or material omission. The maximum penalties that may be assessed for fraudulent, grossly negligent, and negligent violations of the statute are set forth in 19 U.S.C. § 1592(c)(1)-(3) and 19 C.F.R. § 162.73. These penalties vary according to the level of culpability, the value of the merchandise, and the revenue loss caused by the violation. Significant reductions to these maximum penalties are provided in 19 U.S.C. § 1592(c)(4), the "prior disclosure" provision. A prior disclosure occurs if the violator discloses the circumstances of a violation before or without knowledge of the commencement of a formal investigation of such violation and tenders the actual loss of duties resulting from the violation under subsection (a) of § 1592. The duties of which the government is deprived by reason of the violation of subsection (a) are also recoverable under 19 U.S.C. § 1592(d).

Depending upon the degree of culpability, the violator who makes a valid prior disclosure in accordance with 19 U.S.C. § 1592(c)(4) will be assessed a penalty of either interest on the loss of revenue (negligent or grossly negligent violations) or an amount equal to the loss of revenue (fraudulent violations). NAFTA prior disclosures are treated in a significantly different manner. Unlike 19 U.S.C. § 1592(c)(4), the prior disclosure provisions of 19 U.S.C. § 1592 at (c)(5) provide that the violator *will not be assessed a penalty* under 19 U.S.C. § 1592(a) for making an incorrect claim for preferential

tariff treatment under NAFTA, if in accordance with regulations issued by the Secretary of the Treasury, the violator "voluntarily and promptly makes a corrected declaration and pays any duties owing." 19 U.S.C. § 1592(c)(5)(B). Section 181.82 of the Customs Regulations (19 C.F.R. § 181.82(1998)) provides the administrative procedures for NAFTA prior disclosure and governs Bridalane's prior disclosure for importations occurring on and after January 1, 1994. Section 181.82 requires that the violator tender the actual loss of duties in order to receive the benefits of a NAFTA prior disclosure. Section 181.1 of the Customs Regulations (19 C.F.R. § 181.1(1998)) defines Customs duty in the context of NAFTA to be any Customs or import duty and a charge of any kind imposed in connection with the importation of a good.

### DISCUSSION

■ The Government's position is that there may be no importer actions with regard to 19 U.S.C. § 1592. According to the Government, the only access to the court is pursuant to a government action to recover 19 U.S.C. § 1592 duties and/or penalties pursuant to 28 U.S.C. § 1582 (1994) and that administrative procedures provide all the relief necessary for the importer. The courts have not agreed with this position. *Trayco, Inc. v. United States,* 994 F.2d 832 (Fed.Cir. 1993) recognized a Tucker Act remedy for recovery of erroneously extracted 19 U.S.C. § 1592 penalties. *Tikal Distrib. Corp. v. United States,* 970 F.Supp. 1056, 1062–64 (CIT1997) declined to extend *Trayco* to find a substantive right to recover duty payments voluntarily tendered to avoid penalties, but recognized 28 U.S.C. § 1581(a) jurisdiction for recovery of *duties* involuntarily extracted in the course of 19 U.S.C. § 1592 administrative proceedings relating to merchandise imported after a voluntary tender.

The problem here is that plaintiff seeks prior disclosure treatment, but has not paid the claimed marking duties to Customs because there is no definitive avenue of recovery of the duties if they are wrongfully extracted by Customs and if they are considered part of a "voluntary" prior disclo-

sure. *See Pentax Corp. v. Robison*, 924 F.Supp. 193, 196–98 (CIT1996), *rev'd on other grounds*, 125 F.3d 1457 (Fed.Cir. 1997); *Tikal*, 970 F.Supp. at 1061. The matter is further complicated by Customs' lack of clear regulatory procedures and timetables for protesting post-disclosure exactions of duties under 19 U.S.C. § 1592.

If this matter concerned extracted penalties, the court could say to plaintiffs, "Pay the penalties and seek recovery in district court pursuant to *Trayco*, or do not pay them and let the Government sue you." But the issue here is prior disclosure treatment and the recovery of *duties*, the essence of this court's jurisdiction. The issue of jurisdiction over cases such as the one at hand and other types of 19 U.S.C. § 1592 penalty and duty recovery cases is in considerable turmoil.[2] Nonetheless, the court must decide whether there is jurisdiction here to resolve the issue of whether *marking* duties must be paid to obtain prior disclosure treatment. The state of the law is still undecided as to whether marking duties, which arise only when the law is violated, are the type of duty that courts have found must be paid to receive prior disclosure treatment. The court concludes that importers should not be forced to forfeit marking duties without being allowed a chance to litigate the issue. *But cf. Tikal*, 970 F.Supp. at 1063, n. 9 (duties (not marking) paid for prior disclosure treatment; no importer suit jurisdiction; no due process deprivation).[3] The court finds Congress did not intend in the enactment of 19 U.S.C.

§ 1592 to deprive the parties of a judicial avenue of relief in a case such as the one at hand.

■ In any normal understanding of the term, the duty payments at issue are not "voluntary." As the plaintiff tendered duties to the court by seeking to deposit them on the date suit was commenced and the court has ordered them accepted into the registry of the court, plaintiff has perfected its right to protest denial jurisdiction in this case. *See* 28 U.S.C. § 1581(a) (protest denial jurisdiction) and 28 U.S.C. § 2637(a) (1994) (payment of duties required to commence § 1581(a) action).[4] On February 16, 1998, plaintiff protested the government's February 5, 1998 decision to compel payment of marking duties. That protest was denied on June 8, 1998. Suit was timely filed one month later. *See* 28 U.S.C. § 2636(a) (1994) (180 days to file suit after protest denial).

If 28 U.S.C. § 1581(a) jurisdiction does not lie, the court has jurisdiction under 28 U.S.C. § 1581(i) to resolve this dispute arising out of laws providing for duties from imports. *See Miller & Co. v. United States*, 824 F.2d 961, 963 (Fed.Cir.1987) (jurisdiction lies under subsection (i) if other provisions of 28 U.S.C. § 1581 are inadequate). The court believes jurisdiction over this type of action must exist to avoid extreme deprivations without judicial review. *See, e.g. Pentax*, 924 F.Supp. at 197–98. Congress could not have intended otherwise. This is especially so because the government continues to seek

---

2. The Court of Appeals could assist in this matter by spelling out in definitive fashion the appropriate avenues of jurisdiction. It might begin by reconsidering the holding of *Trayco* and its broader implications. Once the court recognized the substantive right of penalty recovery in *Trayco*, jurisdiction in this court makes sense under the statutory scheme. Section 1581(i)of Title 28 seems broad enough to provide jurisdiction over the substantive right because penalty recovery actions relate to the enforcement and collection of customs duties. Certainly if there is a right to recover duties erroneously paid to obtain prior disclosure benefits, jurisdiction in the Court of International trade exists. Alternatively, the government might seek legislation to make clear that there is meaningful relief under the statute for both 19 U.S.C. § 1592 penalty and duty recovery, and that there is not substantial deprivation without judicial scrutiny. *See Ex*

*Parte Young*, 209 U.S. 123, 148, 28 S.Ct. 441, 52 L.Ed. 714 (1908).

3. One might argue that Congress never intended to deprive importers of any disputed duties permanently. The prior disclosure scheme may protect Customs adequately merely by requiring payment up-front as a prerequisite to favorable treatment, leaving the parties free to litigate the duty issue. *Tikal*, however, is representative of a line of cases that do not accept this broader view of jurisdiction.

4. Normally "paid" for purposes of 28 U.S.C. § 2637(a) means paid to Customs, but given the confused state of the law regarding jurisdiction over marking duties paid to receive prior disclosure statement, payment into the registry of the court suffices. This will protect Customs in the same way intended by the statute.

payment of marking duties for prior disclosure treatment in the face of a Court of Appeals decision to the contrary. Although the government arguably may continue to litigate a previously rejected theory in a new case, as well as an entirely new theory, there remains a strong possibility that plaintiff may not be required to tender marking duties for prior disclosure treatment. It also remains a possibility that if the duties were received by Customs, 28 U.S.C. § 1581(a) jurisdiction were not available, and Customs were found to be wrong in requiring the duties, they could not be recovered. *See Pentax,* 924 F.Supp. at 197–98; *Tikal,* 970 F.Supp. at 1061. Under these circumstances, the court concludes Congress intended the court to have jurisdiction, and so provided in 28 U.S.C. § 1581(i), if not in § 1581(a).

The motion to dismiss is denied.