**Slip Op. 01-7**

# UNITED STATES COURT OF INTERNATIONAL TRADE

**Before: Judge Judith M. Barzilay**

------------------------------------------------------ x

The United States,                                           :

                Plaintiff,              :

          v.                                            :

Golden Ship Trading Company, Joanne Wu :
and American Motorists Insurance
Company,                                                      :

            Defendants.            :

------------------------------------------------------ x

Court No. 97-09-01581

[Plaintiff's Motion for Summary Judgment granted in part and denied in part and Defendants' Cross-Motion for Summary Judgment granted in part and denied in part. Defendants are liable for negligent violations of 19 U.S.C. § 1592 and are assessed penalties but not marking duties]

Decided: January 24, 2001

*Stuart E. Schiffer*, Acting Assistant Attorney General, United States Department of Justice; *David M. Cohen*, Director, Commercial Litigation Branch, Civil Division (*Erin E. Powell*), *Jeanmarie Reiner*, U.S. Customs Service, Office of Associate Chief Counsel, Of counsel, for Plaintiff.

*Levine & Mass* (*Thomas J. Kovarcik*), for Defendants.

## OPINION AND ORDER

**BARZILAY, JUDGE:**

### INTRODUCTION

This case is before the court on cross-motions for summary judgment. Plaintiff

("Customs") commenced this action to recover civil penalties from the defendants Golden Ship

Trading Company, Incorporated ("Golden Ship") and Joanne Wu ("Ms. Wu") for violation of 19

U.S.C. § 1592(a) (1992) and to recover marking duties for violations of 19 U.S.C. § 1592(d)

(1992).   The plaintiff alleges that Ms. Wu negligently presented material false statements both

on the entry documents and the product that misrepresented the country of origin of the

merchandise ("tee-shirts") as the Dominican Republic when the actual country of origin was the

People's Republic of China.  Plaintiff further alleges because of Ms. Wu's violative conduct the

United States was deprived of lawful marking duties.  Ms. Wu claims that she exercised

reasonable care and did not negligently introduce merchandise into the commerce of the United

States.  Ms. Wu further claims the plaintiff was never owed marking duties because it cannot

prove the marking duties were lost as a result of the allegedly improper country of origin

marking.

**JURISDICTION**

This court has jurisdiction pursuant to 28 U.S.C. § 1582 (1992) which provides for the

judicial review of civil penalties assessed under 19 U.S.C. § 1592 (1992).

**BACKGROUND**

At issue before this court are three entries of imported tee-shirts.  The tee-shirts were

imported by Ms. Wu from Pedro C. x A.("exporter").  *Examination Before Trial of Joanne Wu*,

pp.10-11, 14. ("*Wu Dep.*") Ms. Wu and the exporter began their business relationship after Wu

and Hui Tse Nu ("Hui"), the principal of the exporter, met and discussed the possibility of

cooperating to import the tee-shirts into the United States. *Wu Dep*., pp. 14, 24.  Wu claims Hui

explained that he operated a factory in the Dominican Republic and wanted to import the tee-

shirts through Wu into the United States.  *Id*.  Wu decided she would form the Golden Ship

Trading Company and import the tee-shirts from Hui's factory in the Dominican Republic.[1] To

facilitate the importation process, Wu hired a licensed customhouse broker. *Wu Dep*., pp. 19, 21-

22, 25-27, 38. Hui furnished all the relevant information necessary for the broker to prepare the

import documents including securing the appropriate visa for entry of wearing apparel into the

United States. *Wu Dep*., pp. 24-25.[2] Even though Wu did not attempt to verify the accuracy of

the information Hui provided, she signed the entry papers and the declaration stating that the

country of origin of the tee-shirts was the Dominican Republic. *Wu Dep.,* p. 24. After an

investigation by Customs it was determined that the actual country of origin of the tee-shirts was

the People's Republic of China. *Pl.'s Statement,* at ¶¶ 14-15. Customs discovered that the

exporter would produce the body of the tee-shirts in China and then export them to the

Dominican Republic. *Id.* In the Dominican Republic sleeves were attached to the body of the

shirt. *Id.* After the sleeves were attached the shirts were exported to the United States and

marked to show the Dominican Republic as the country of origin. *Pl.'s Statement*, at ¶ 14. The

process performed in the Dominican Republic did not constitute a substantial transformation to

confer origin according to the Customs regulations then in effect. *See* 19 C.F.R. § 12.130(e)(2);

---

[1] Defendant Wu had incorporated Defendant Golden Ship for the purpose of importing and was the sole officer and owner. *Pl.'s Statement of Uncontested Facts*, at ¶¶ 2,3,4 ("*Pl.'s Statement*"). American Motorists Insurance Company separately resolved the government's claims against it. *See Order of Dismissal*, July 21, 2000.

[2] The importation into the United States of certain textile products and wearing apparel is subject to quantitative restrictions depending on the country of origin and the tariff provisions of the product. In order to control the exportation of textile products into the United States to prohibit unauthorized entry and to combat illegal transhipment and quota fraud, Customs has established a visa system for the importation of certain commercial shipments of textiles and wearing apparel. Visas are issued by the foreign government involved and products which do not have the proper visa are denied entry into the commerce territory of the United States. *See* http://www.customs.treas.gov/impoexpo/impoexpo.htm

*See infra* p. 8. Having uncovered the scheme, Customs determined the true country of origin of the tee-shirts was the People's Republic of China. Therefore, the government alleges, Wu signed the country of origin declaration falsely stating that the country of origin was the Dominican Republic and that these materially false statements, acts and/or omissions were performed without due care and constitute violations of 19 U.S.C. § 1592. *Pl.'s Statement*, at ¶ 9. The government now seeks penalties in the amount of $44,656.00. Additionally, the government alleges the false statements caused it to lose marking duties in the amount of $14,568.

Ms. Wu does not dispute that the country of origin is the People's Republic of China, but she denies any negligence on her part. *See Defs.' Memo. in Supp of Cross. Mot. for Summ. J. and Opp'n to Pl.'s Mot. for Summ. J.*, at 11-12 ("*Defs' Br.*"). She claims that she was defrauded by the exporter because he concealed the fact that the tee-shirts were manufactured in China. *See Id*. at 10. Furthermore, Ms. Wu denies that she owes marking duties because the government cannot prove marking duties were lost as a result of the improper country of origin markings.

## STANDARD OF REVIEW

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." USCIT R. 56(d). Moreover, summary judgment is a favored procedural device "'to secure the just, speedy and inexpensive determination of an action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1); *Sweats Fashions, Inc. v. Pannill Knitting Co.*, 833 F.2d 1560, 1562 (Fed. Cir. 1987). Whether a disputed fact is material is identified by the substantive law and whether the finding of that fact might affect the outcome of the suit. *See*

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). In actions brought by the United States to recover monetary penalties "all issues, including the amount of the penalty, shall be tried de novo." 19 U.S.C. § 1592(e)(1).

## DISCUSSION

A.    *Plaintiff may not recover marking duties under 19 U.S.C. § 1592(a).*

Plaintiff claims that it is entitled to marking duties under 19 U.S.C. § 1592(d), in the amount of $14,568.00, as a consequence of Ms. Wu's material and false statements made to Customs regarding the merchandise at issue. The statute provides that "if the United States has been deprived of lawful duties, taxes, or fees as a result of a violation of subsection (a) of this section, the Customs Service shall require that such lawful duties, taxes, and fees be restored, whether or not a monetary penalty is assessed." 19 U.S.C. § 1592(d). The marking statute provides for a ten percent *ad valorem* duty to be paid on a mismarked article. *See* 19 U.S.C. § 1304 (h).[3]

The case of *Pentax Corp. v. Robison*, 125 F. 3d 1457, 1462-3 (Fed. Cir. 1997) *reh'g granted*, 135 F. 3d. 760 (Fed. Cir. 1998) illustrates when such *ad valorem* duties must be tendered. *Pentax* involved the importation of photographic and optical equipment and accessories marked as originating in Hong Kong, when the products were in fact produced in the

---

[3]  19 U.S.C. §1304 provides in relevant part:

(h) Additional duties for failure to mark

    If at the time of importation any article . . . is not marked in accordance with the requirements of this section, . . . there shall be levied, collected, and paid upon such article a duty of 10 per centum ad valorem, which shall be deemed to have accrued at the time of importation. . . . At the time of importation of the entries at issue, this section was designated as 19 U.S.C. § 1304(f).

People's Republic of China. *See Pentax,* 125 F. 3d at 1460. Seeking to mitigate any penalties for violating § 1592(a), Pentax made a "prior disclosure" to Customs pursuant to 19 U.S.C. § 1592(c)(4), admitting that it had imported falsely marked camera equipment. *See Pentax v. Robinson*, 20 CIT 486,487; 924 F. Supp. 193, 194 (1996). This court determined that as a consequence of Pentax's failure to correctly mark the correct country of origin on the merchandise, additional duties of ten percent of the merchandise's value were owed under 19 U.S.C. § 1304(f). *See Id.* at 492. The Court of Appeals reversed holding that "the act of culpably mismarking goods cannot be said to have deprived government of the [marking duties]. *Pentax*, 125 F. 3d at 1463. In so holding the court articulated its but-for test:

> We interpret the section 1592(d) causation requirement as requiring nothing less than but-for causation. . . . Section 1592(a) prohibits misrepresentations resulting from misconduct–fraud, gross negligence, or negligence. Thus, the actions that violate § 1592(a) are the acts of fraudulently or negligently mismarking imported goods. If the act of culpably mismarking the goods deprived the government of duties. . . then those duties are of the type whose tender is required. . . .

*Id*.

Thus, the mismarking must be the but-for cause of the loss of marking duties in order for Customs to recover the 10 percent value of the merchandise.

In its moving brief, the plaintiff states that "as a consequence of their violative conduct, Ms. Wu is liable for unpaid marking duties under 19 U.S.C. § 1592(d)." *Pl.'s Mot. for Summ. J.,* at 11 ("*Pl.'s Br.*"). This assertion by itself does nothing to explain how the mismarking was a but-for cause of the loss of marking duties; it merely states a legal conclusion. Ms. Wu argues that Customs has not proved that it would have collected the marking duties but for the country of origin information contained in the entry documents, because Customs has not shown that: (1) it would have reviewed the country of origin information before entry; (2) the country of origin information

caused it to forego inspection of the marking; and (3) it would have discovered a country of origin marking error prior to entry. *See Defs.' Br.,* at 7. Hence, according to Ms. Wu, Customs' claim for marking duties under §1592(d) must fail.

Plaintiff responds that Golden Ship's assertion is a distortion of the law regarding collection of marking duties. *See Pl.'s Opp'n and Reply to Def.'s Cross Mot. for Summ. J. and Opp'n to Defs.' Mot. for Summ. J.,* at 6 ("*Pl.'s Opp'n*"). According to Customs, under the *Pentax* test, the plaintiff must prove that (1) the entry documents contained material false statements or omissions, (2) lawful duties were not paid, and (3) the government would have collected the duties but for these false statements or omissions. *Id.* at 3.

The court agrees with Ms. Wu that Customs cannot prove but-for causation. Plaintiff correctly notes that 19 U.S.C. § 1304 requires that marking duties accrue if merchandise has been mismarked and has entered into the commerce of the United States. However, *Pentax* stands for the proposition that if the duty could not have arisen but for the mismarking, then the act of mismarking cannot be the but-for cause of the failure to collect the duty. *Pentax*, 125 F.3d at 1463. Here, Ms. Wu is correct that the mismarkings on the entry documents and tee shirts did not deprive Customs of the marking duties under the statute. Because of the specific requirements on importation of wearing apparel marked as originating in the People's Republic of China, importation would have been denied for lack of the proper visa and no marking duties would have been required.[4] Therefore, following the Federal Circuit's reasoning in *Pentax*, the court holds that the mismarkings did not deprive Customs of marking duties and the plaintiff cannot recover such duties under § 1592(d).

---

[4] *See supra,* n. 2.

B.     *Ms. Wu negligently submitted material false statements to Customs in violation of 19 U.S.C. § 1592(a).*

The statute allowing Customs to recover penalties, 19 U.S.C. § 1592, provides in relevant part:

(a) Prohibition

      (1)     General rule

      Without regard to whether the United States is or may be deprived of all or a portion of any lawful duty, tax, or fee thereby, no person, by fraud, gross negligence, or negligence--

            (A)     may enter, introduce, or attempt to enter or introduce any merchandise into the commerce of the United States by means of

                  (i)     any document written or oral statement, or act which is material and false, or

                  (ii)    any omission which is material, . . . .

Section 1592(e) describes the burden of proof that each side bears in a penalty action based on negligence. The United States bears the burden of establishing that the material false act or omission occurred; the burden then shifts to the defendant to demonstrate that the act did not occur as a result of negligence. *See* 19 U.S.C. § 1592(e)(4). In this action, Customs has adequately demonstrated that the material false act occurred. However, Ms. Wu has not shown the court that these acts were not a result of negligence. Therefore, the court holds in favor of Customs on the penalty claim.

      (1)     Plaintiff has met its burden of showing that the material false act of mismarking the entry papers occurred.

      (a).     The country of origin designation was false.

The country of origin rules in effect when the entries were filed are contained in 19 C.F.R. § 12.130 *et seq* (1992). The pertinent sections of sections of 12.130 are as follows:

Country of origin. For the purposes of this section and except as provided in paragraph (c), a textile or textile product,. . . imported into the customs territory of the United States, shall

be a product of a particular foreign territory or country, or insular possession of the U.S., if it is wholly the growth, product, or manufacture of that foreign territory or country, or insular possession. However, except as provided in paragraph (c), a textile or textile product. . . which consists of materials produced or derived from, or processed in, more than one foreign territory or country, or insular possession of the U.S., shall be a product of that foreign territory or country, or insular possession where it underwent a substantial transformation. A textile product will be considered to have undergone a substantial transformation if it has been transformed by means of a substantial manufacturing or processing operations into a new and different article of commerce.

19 C.F.R § 12.130(b).

An article or material usually will not be considered to be a product of a particular foreign territory or country or insular possession of the U.S. by virtue of merely having undergone one of the following :

(i)  Simple combining operations, labeling, pressing, cleaning, or packaging operations, or any combining thereof;

(ii) Cutting to length or width and hemming or overlocking fabrics which are readily identifiable as being intended for a particular commercial use;

(iii) Trimming and/or joining together by sewing, looping, linking, or other means of attaching otherwise completed knit-to-shape component parts produced in a single country, even when accompanied by other processes (e.g. washing, drying, mending, etc.) normally incident to the assembly process. . . .

19 C.F.R. § 12.130(e)(2).

The government argues Ms. Wu falsely indicated the country of origin of the imported tee-shirts as the Dominican Republic when the real country of origin was the People's Republic of China. Customs contends that the tee-shirts were only assembled in the Dominican Republic and that the assembly did not qualify the tee-shirts as a product of the Dominican Republic. *See* 19 C.F.R. § 12.130(e)(2). Therefore, Customs claims Ms. Wu falsely filed three separate sets of entry documents in 1992 and 1993 that listed the Dominican Republic as the country of origin and that the tee-shirts contained labels stating "Made in the Dominican Republic." *Pl.'s Br.*, at 7-8. Ms. Wu admits that under the country of origin rules the tee-shirts' proper country of origin is the People's

Republic of China. *Defs.' Br.*, at 11-12. Although Ms. Wu concedes that the true country of origin of the tee-shirts is the People's Republic of China, they deny liability for the mismarkings because they claim they were defrauded by the exporter.

The government has proved that under the country of origin rules the tee-shirts are not a product of the Dominican Republic. The mere sewing of the sleeves onto the tee-shirts in the Dominican Republic would not qualify the entries as being a product of the Dominican Republic. *See* 19 C.F.R. § 12.130(e)(2)(iii). Ms. Wu's claims of exporter fraud do not impact the fact that the entry papers and merchandise were mismarked with the improper country of origin. Ms. Wu has only given reasons why the country of origin was mismarked rather than refute Customs' evidence that the actual country of origin was the People's Republic of China. Therefore, the court finds the entry papers falsely stated the country of origin as the Dominican Republic when the true county of origin was the People's Republic of China.

(b)     The country of origin designations were material.

Plaintiff next cites several tests for determining when a false statement is material. In essence, a statement is material "if it has the potential to alter the classification, appraisement, or admissibility of merchandise, or the liability for duty. . . ." 19 C.F.R Part 171 App. B(A) (1992). In the case before the court, Ms. Wu entered merchandise that was manufactured in the People's Republic of China, but merely assembled in the Dominican Republic, as tee-shirts manufactured in the Dominican Republic. The country of origin label on the tee- shirts read, "Made in the Dominican Republic."

Plaintiff asserts that the false statements made as to the proper country of origin for the

entries at issue are material "because the false statements directly impacted Customs' assessment and collection of duties and affected the admissibility of the merchandise." *Pl.'s Br.* at 10. Ms. Wu responds that the plaintiff's claim is insufficient because had the tee shirts been properly marked as originating in the People's Republic of China, they would not have been allowed entry into the United States, and therefore no duties would have been collected. However, this argument is unavailing for Ms. Wu as it demonstrates that the false statements directly impact upon the admissibility of the tee-shirts. Because Ms. Wu's false entry documents impact admissibility, they are material.

(2)     Ms. Wu has not shown that her mismarking of the entry papers was not negligent.

Since the court holds that the statements on the entry papers were both material and false the only remaining issue is whether Ms. Wu has carried her burden that "the act or omission did not occur as a result of negligence." 19 U.S.C. § 1592(e)(4). Customs regulation 19 C.F.R. Pt. 171 App. B (1992) defines negligence as:

> A violation is determined to be negligent if it results from an act or acts (of commission or omission) done through either the failure to exercise reasonable care and competence expected from the person in the same circumstances in ascertaining the facts or drawing inferences therefrom, in ascertaining the offenders's obligation under the statute, or in communicating information so that it may be understood by the recipient. As a general rule, a violation may be determined to be negligent if it results from the offender's failure to exercise reasonable care and competence to ensure that a statement made is correct.

19 C.F.R. Pt. 171 App. B(B)1.

To decide if the mismarking was the result of Ms. Wu's negligence the court must examine the facts and circumstances to determine if Ms. Wu exercised reasonable care under the circumstances.

Customs alleges that Ms. Wu negligently introduced merchandise into the commerce of the

United States when Ms. Wu "took no action to ensure the accuracy of the entry documentation presented to Customs." *Pl.'s Opp'n,* at 9. Customs contends that Ms. Wu's negligence is illustrated by her failure to ascertain (1) where the fabric for the tee-shirts was made or (2) where the tee-shirts were manufactured prior to signing the country of origin declaration or the quota declaration. *Id.*

Ms. Wu admits she relied on the information provided by the exporter and accepted his representations that the Dominican Republic was the country of origin of the tee-shirts because "all the documents that the exporter provided *prior* to entry stated the country of origin was the Dominican Republic." *Mem. of Def. in Supp. of Cross Mot. for Summ. J. and in Opp'n to Pl.'s Mot. for Summ. J.* at 11 ("*Defs.' Opp'n*"). Further, she claims that she was the victim of the exporter's fraudulent scheme which was so elaborate that even Customs had difficulty discovering. *Id.* at 14. Ms. Wu points out that the exporter did have a tee-shirt factory in the Dominican Republic and that the factory did perform some manufacturing operations on the imported tee-shirts. Ms. Wu also claims "figuring out which (tee-shirts) qualified as country of origin Dominican Republic and which did not required an entire team of Customs investigators, special agents and import specialists. Obviously, the exporter's fraud in this case was well-concealed." *Id.* at 12. Furthermore, she contends, if Customs had difficulty investigating and uncovering the exporter's falsifications, how could Ms. Wu, with far fewer resources and less expertise, be expected to know that the entry papers falsely reflected the country of origin of the imported tee-shirts. Therefore, Ms. Wu claims, she was justified in relying on the exporter's entry information.

The court finds that Ms. Wu failed to exercise reasonable care because she failed to verify the information contained in the entry documents. Under the regulation's definition of reasonable care, Ms. Wu had the responsibility to at least undertake an effort to verify the information on the

entry documents. There is a distinct difference between legitimately attempting to verify the entry information and blindly relying on the exporter's assertions. Had Ms. Wu inquired as to the origin of the imported tee-shirts or, at minimum, attempted to check the credentials and business operations of the exporter, she could make an argument that she attempted to exercise reasonable care and competence to ensure that the statements on the entry documents were accurate. Instead Ms. Wu applies circular reasoning to prove she was not negligent. She assumes she would not have been able to discover that the exporter was misrepresenting the county of origin and therefore was not negligent even though she made no attempt to verify. The critical defect with Ms. Wu's argument is that it removes the reasonable care element from the negligence standard. The exercise of reasonable care may not have guaranteed success, but the failure to attempt any verification undercuts the argument that she would have been unable to determine the truth.

Ms. Wu failed to "exercise" reasonable care because she utterly failed to attempt to verify the exporter's information. Indeed, Ms. Wu admits, and the evidence is uncontraverted, that she relied solely on the word of the exporter.

> Q. What information did you rely on when you signed this document that indicates that the single country of origin of the imported items was the Dominican Republic?
>
> A. I believe [sic] Pedro. He said he sent me all the documents and the documents said it's made in the Dominican Republic so I just signed them.

*Wu. Dep.,* p. 24, lines 9-15.

Furthermore, Ms. Wu openly admits she did not inquire at all about the origin of the imported merchandise.

> Q. Did you discuss with Mr. Hui (the exporter) where the fabric from the tee-shirts

where made?

A.      I never asked.  I don't [sic] know how to ask.  I never asked it.

*Wu. Dep.,* p. 17, lines 3-6.

Although it is apparent Ms. Wu did not directly research the authenticity of the exporter's claims, she argues that she employed the services of a licensed customhouse broker and relied on the broker's expertise to properly prepare  the import documents.  *Defs.' Opp'n,* at 13.  However, Ms. Wu did not attempt verify or ascertain the correctness of the information prepared by the broker.

Q.      Did you discuss with the broker where he got the information from?

A.       I did not discuss it with him.

*Wu. Dep.,* p. 26, lines 13-15.

Even though Ms. Wu did not attempt to verify the country of origin, she still signed and certified the accuracy of the information contained in the entry documents.  *Wu Dep.,*  p. 24; *Pl.'s App.* 2-5.  Ms. Wu's reliance on the exporter and the broker does not remove the obligation to exercise reasonable care and competence to ensure that the statements made on the entry documents were correct.

The court finds that Ms. Wu's failure to attempt to verify the entry document information shows she did not act with reasonable care and did, therefore, attempt to negligently introduce merchandise into the commerce of the United States in violation of 19 U.S.C.§ 1592 (a)(1)(A) and, therefore, must pay a civil penalty for her negligence pursuant to 19 U.S.C. § 1592(c)(3)(B).

With regard to the amount of the penalty, the court directs the parties to attempt to settle the matter by consultation guided by the court's opinions in *United States v. Complex Machines Works Co.,* __ CIT__,83 F. Supp. 2d 1307, (1999) and *United States v. Modes, Inc.,* 17 CIT 627, 826 F. Supp. 504, (1990) regarding mitigation.

Therefore, it is ORDERED that Plaintiff's Motion for Summary Judgment is granted in part and denied in part; and it is further

ORDERED that Defendants' Cross-Motion for Summary Judgment is granted in part and denied in part; and it is further

ORDERED that the parties consult in good faith regarding the appropriate penalty amount; and it is further

ORDERED that a telephone conference be held on February 21 at 10 a.m. to allow the parties to report on their consultations and to decide whether further proceedings in this matter are necessary.


Dated: _____                                    _____
     New York, NY                                                        Judith M. Barzilay
                                               Judge